STATE of Indiana, Defendant-Appellant,

v.

Ervin H. WILLIAN and Christel Willian,
Plaintiffs-Appellees.

No. 1–280A42.

Court of Appeals of Indiana,
First District.

July 22, 1981.

Rehearing Denied Aug. 31, 1981.

Linley E. Pearson, Atty. Gen., Frank A. Baldwin, Deputy Atty. Gen., Indianapolis, for defendant-appellant.

Donald R. Forrest, George W. Gesenhues, Jr., New Albany, for plaintiffs-appellees.

RATLIFF, Judge.

## STATEMENT OF THE CASE

The State of Indiana appeals from judgments for damages of $110,000 in favor of Ervin H. Willian for personal injuries, and for $10,000 damages for Christel Willian for loss of consortium. The action by Willians was based upon alleged negligent design, construction, maintenance, and repair of U. S. Highway 150. We affirm.

## STATEMENT OF THE FACTS

On March 16, 1973, Michael Ingram[1] was driving his pickup truck in an easterly direction on U.. S. Highway 150, a two lane highway in Floyd County. About one mile east of the town of Galena, the pickup truck crossed the center line of the highway into the westbound lane, colliding with an automobile being driven in a westerly direction by Ervin Willian. It was raining and there was water on the roadway. Ingram testified that he was driving along the highway at 35 to 40 miles per hour; that he started slipping after he passed the truck stop and could not steer; and that he slid to his left toward the center of the road and struck Willian's car. He further testified that his truck had recapped tires which were in good shape and that his truck was in good mechanical condition. Ingram received a traffic ticket for driving left of the centerline and paid a fine in justice's court in Galena.

In August of 1972 the Indiana State Highway Department performed a crack sealing operation on U. S. 150 from Greenville eastward to a point where the highway becomes four lane. The town of Galena is between these two points. The crack sealing was done by pouring large amounts of tar on the cracks. According to witnesses, instead of pouring the tar just into the cracks, the workmen spread the tar all around the general area where there was a crack. Traffic on the highway caused the tar to be spread all over the road. As a result of the tar being all over the surface,

the highway was rendered slick, and when wet it was very slick, like grease. The evidence revealed that this slippery condition continued to exist from the time of the sealing operation in August 1972 until the collision in March 1973.

Evidence was admitted concerning an accident in October 1972, at the west edge of Galena, some three miles from the location of the Willian accident which occurred east of Galena. Witnesses testified that a fire truck attempting to back up the road to the accident scene, slipped off the wet slick roadway. The roadway at that point had also been the subject of the August 1972 crack sealing. Other witnesses also testified to the slick condition of U. S. 150, after the crack sealing, particularly when wet, along the entire distance involved in the sealing operation.

Witness Euna Hartfield testified that no sand was applied on the tar. She called the State Highway garage in New Albany about a month after the sealing work because her car would slide when entering U. S. 150 from her driveway and reported this condition. According to her, sand was then applied to the road. Another witness testified that sand was put on the road, but it did no good.

Further evidence showed that there was a drainage problem near the Western Truck Stop, close to the scene of the collision in question, and that water would stand on the road. There were no "slippery when wet" signs placed in the area.

Evidence was also presented concerning skid test results from tests performed by the State on U. S. 150 in October 1972. Such tests are rated from 0 to 100, the higher the number, the greater the friction. Willians' expert, W. R. McIntosh, retired head of the department of civil engineering at the University of Louisville, testified that "anything below .55 is slick enough to be in trouble. I would say that .33 and .279 are very slick." These last two figures represented the test results on the highway

1. Originally, Willians sued Ingram along with the State. An out-of-court settlement was ne-

gotiated with Ingram prior to trial, leaving the State as the only defendant at trial.

in question. McIntosh also testified the proper method of crack sealing is to pour hot tar into the cracks and sprinkle sand over the top to roughen the surface. He also testified as to proper highway drainage and described the concept of "hydroplaning" of vehicle tires on a layer of water on the highway.

Willians also presented evidence concerning use of signs and drainage and that the segment of the road in question received low ratings in those instances. Evidence was also introduced as to Willian's injuries.

The state presented evidence that there was a little water on the highway, but that it was not very deep. Also, the state's evidence indicated that the left front tire on Ingram's truck was bald which would have caused him to pull to the left. A tire was introduced into evidence, and a tire consultant testified as to the hazardous condition of that tire.[2]

### ISSUES

1. Whether the trial court erred in overruling the state's objection to the competency of the witness W. R. McIntosh.

2. Whether the trial court erred in admitting evidence of an unrelated accident which occurred on the same road approximately three miles west of the accident which is the subject of this action.

3. Whether the trial court erred in admitting evidence of the condition of U. S. Highway 150 west of Galena.

4. Whether the evidence was insufficient as a matter of law to support the verdicts.

### DISCUSSION AND DECISION

■ Before discussing the specific issues, we note that the state has a general duty to exercise reasonable care in the design, construction, maintenance, and repair of its highways for the safety of the public. *State v. Totty*, (1981) Ind.App., 423 N.E.2d 637 Ind.App. No. 1–1179–A–301;

State v. Thompson, (1979) Ind.App., 385 N.E.2d 198, trans. den.; Indiana State Highway Commission v. Clark, (1978) Ind. App., 371 N.E.2d 1323. Before liability can be imposed, the state must also have actual or constructive knowledge of the danger or peril. *State v. Totty, supra; City of Indianapolis v. Bates*, (1976) 168 Ind.App. 555, 343 N.E.2d 819, *trans. denied*.

### Issue One

■ State objected to the competency of W. R. McIntosh as a witness on the ground that he was not a registered engineer in Indiana and that his testimony constituted the practice of engineering. In support of this objection, the state cites Ind.Code 25–31–1–1 prohibiting any person from engaging in the practice of engineering unless such person is a registered engineer in this state, and Ind.Code 25–31–1–2(d) defining the practice of engineering.

The authorities are contrary to the state's position. In *State v. Totty, supra*, and in *State v. Maudlin*, (1981) Ind.App., 416 N.E.2d 477, *trans. denied*, we specifically rejected the state's position and held that a qualified engineer was not rendered incompetent to testify because he was not registered in Indiana. In *Maudlin*, at 416 N.E.2d 481, Judge Neal stated: "[A] duly licensed practitioner of a profession is not barred from testifying in a court in this state merely because he has not been admitted to practice here."

Our supreme court has held that a witness having the requisite knowledge of the value of property may testify as a valuation witness even though he is not a licensed real estate broker. *State v. Vaughan*, (1962) 243 Ind. 221, 184 N.E.2d 143. The court there said the purpose of the licensing statute was to prevent unqualified persons from engaging in the real estate business, not to restrict the testimony of competent witnesses.

---

**2.** There is some question whether this tire was in fact the identical tire from the left front wheel of Ingram's truck.

Courts in other states have reached like conclusions. *See Kuisis v. Baldwin-Lima-Hamilton Corp.*, (1974) 457 Pa. 321, 319 A.2d 914; *Cobb v. State*, (1973) 50 Ala.App. 707, 282 So.2d 327; *W. W. White Co. v. LeClaire*, (1970) 25 Mich.App. 562, 181 N.W.2d 790; *Hagen v. Swenson*, (1975) 306 Minn. 527, 236 N.W.2d 161.

Here, McIntosh's testimony disclosed that he was the retired head of the department of civil engineering at the University of Louisville; he held three degrees in engineering from Rose Polytechnic Institute, and was a registered engineer in Kentucky. The only objection to his qualifications or competency as an expert witness was that he was not a registered engineer in Indiana. Such objection is not well taken.

Nor did McIntosh's testimony constitute the practice of engineering. That specific contention was addressed and rejected by the Court of Appeals of Michigan in *W. W. White Co. v. LeClaire, supra*, where the testimony of a graduate, experienced architect, not licensed in Michigan was challenged as constituting the practice of architecture within the meaning of the licensing statute. The court held it was not, stating such an argument to be specious.

Further, we observe that the determination of whether a witness is qualified to give an opinion as an expert is within the trial court's sound discretion. *State v. Maudlin, supra; Board of Commissioners of Vanderburgh County v. Joeckel*, (1980) Ind. App., 407 N.E.2d 274, *trans. denied; City of Bloomington v. Holt, Admr.*, (1977) 172 Ind.App. 650, 361 N.E.2d 1211. In *Reid v. State*, (1978) 267 Ind. 555, 560, 372 N.E.2d 1149, 1152, Justice Prentice writing for our supreme court stated:

> "There can be no hard and fast rule as to the quantum of knowledge required to qualify a witness as an expert in a given field. It has been said that he must be shown to be competent upon the subject concerning which he is to testify."

■ Thus, we are of the opinion that it is the education, training, knowledge, and experience in a given field rather than licensing by the state of the forum which renders a witness competent to testify as an expert and qualified to give an opinion upon a subject within the scope of his expertise. *Cobb v. State, supra.*[3]

McIntosh was a competent witness and his lack of licensing in Indiana did not render him incompetent.

*Issues Two and Three*

The state contends it was reversible error to admit testimony concerning the October 1972 accident west of Galena, where it was shown that the fire truck, in attempting to back to the accident scene, slid off the wet highway, and to admit the testimony of plaintiffs' witness Robert Gibson that a portion of U. S. 150 west of Galena was slippery in October of 1972. We disagree.

Willians argue that the state failed to preserve these issues by making a sufficient objection at the trial. They contend the state failed to object on grounds of lack of proper foundation, but rather objected only upon grounds of relevancy which Willians assert is an insufficient objection. Although there may be merit in Willians' contention, we prefer to address the issue on the merits of the question of the admissibility of the challenged evidence.

■ In cases involving the existence of an alleged dangerous condition, "[e]vidence is admissible to show the occurrence of prior accidents of a similar character under the same circumstances as the one involved upon the ground that it tends to show the place of the accident has been demonstrated to be unsafe and dangerous. . . ." *State v. Maudlin, supra*, at 416 N.E.2d 481–82. The admission of such evidence is left to the sound discretion of the trial court and will be reversed only for abuse of that discretion. *State v. Maudlin, supra.* Such evidence is admissible to prove the existence of a dangerous condition and notice thereof. *State v. Melloy*, (1980) Ind.App., 398 N.E.2d

3. In *Cobb v. State, supra*, the Alabama court said at 282 So.2d 330: "[I]t is the degree from an accredited medical school, and not the licensing by the state which inculcates the witness with the necessary learning, knowledge, and skill, to enable him to express an opinion."

1382, *trans. denied.* Further, it has been said that "[o]bviously a completely identical previous accident is not the only admissible one." 398 N.E.2d at 1384. In *Gillam v. J. C. Penney Co.,* (7th Cir. 1965) 341 F.2d 457, a boy was injured when his arm got caught between the riser of the step and the upright metal side-wall of an escalator. Evidence was admitted of another accident occurring forty months later on the same escalator, and one ten months prior on a different Penney escalator. The court noted that the jury was entitled to consider that all of Penny's escalators were of the same size, shape, design, and construction, and had been installed at the same time and continuously maintained by Westinghouse. The court said that Indiana law permitted evidence of other accidents of a similar character and under similar conditions and found no error in receiving such evidence.

In this case, however, we perceive the issue more properly to be one of admissibility of evidence of conditions at a place other than the exact site of the occurrence which forms the basis for this action rather than evidence of other accidents. Here, the evidence of the other accident in October of 1972 merely provided the reason for the presence of the fire truck and set the stage for the introduction of evidence concerning the problems encountered by the fire truck. In fact, the trial court did not allow any evidence of the details of the collision in question, but limited the testimony to the road conditions and the fact of the fire truck's slipping off the road.

■ The question of the admissibility of conditions at other places is more difficult. Generally, evidence of conditions at a place other than the one in question is not admissible to establish that a condition at the place in question is dangerous, unless there is a showing of some connection between the places. 29 Am.Jur.2d, *Evidence,* § 301 (1967); 40 Am.Jur.2d, *Highways, Streets, and Bridges,* § 600 (1968). Evidence of the condition of the highway and the existence of similar defects at other places has been held competent where the places are so close and the conditions so similar they can be considered as substantially the same. 40 C.J.S. *Highways* § 280(2), 280(3) (1944). However, in order to permit evidence of condition at other places, a proper basis must be laid for admission of such proof. *Kinzel v. West Park Investment Corp.,* (1959) Mo., 330 S.W.2d 792.

*Morrison v. Ted Wilkerson, Inc.,* (W.D. Mo.1971) 343 F.Supp. 1319, involved an accident at a bridge construction site where lane barrels had been placed to control traffic. The barrels were placed so that they could not be seen until too late to avoid danger. Evidence of other accidents at another bridge in a different county which was similarly marked was held properly admitted. The court said at 343 F.Supp. 1326:

"A reasonable construction of the evidence, however, shows that the two locations were substantially similar in that both involved the placing of lane barrels so that they might not be seen until it was too late to avoid an unanticipated danger. The bridges constructed on both projects were similar. So were the methods of construction. The width of the roadways were nearly the same. The terrain and physical characteristics of the roadway and surroundings were similar. The approaches were similar. The barrels were similar. And the same arrow warning truck was used on both projects to warn traffic. In the circumstances of this case, when at the two locations similar warning practices were used by defendant, it is concluded that there was no error to admit the evidence as relevant to the issue of notice of a dangerous condition. The admission of this evidence was within the discretion of the Court." (Citations omitted.)

In *City of Phoenix v. Boggs,* (1965), 1 Ariz.App. 370, 403 P.2d 305, a seven year old boy tripped over a rut in a street and fell onto a piece of wire causing loss of an eye. The street was an unimproved dirt street approximately one-half mile in length. Evidence showed the street was literally strewn with wire, glass, paper, and other debris. The court held this evidence was admissible to show both the condition

of the street at the time and that the city had notice of the existence of a dangerous defect. The court held it was not necessary to show either the exact rut over which the boy tripped or the exact piece of wire upon which he fell. *See also, Slow Development Co. v. Coulter*, (1960) 88 Ariz. 122, 353 P.2d 890 (allowing evidence of two prior falls on the same floor but at a different location than plaintiff's fall). Further, we reiterate that *Gillam v. J. C. Penney, supra*, allowed evidence of an accident on a different escalator.

■ Here, the evidence showed the crack sealing work was done in the same manner over the entire length of U.S. 150 from Greenville, eastward through Galena, to the start of the four lane section. Further, it was shown that tar was spread all over the road surface and that thereby the surface was rendered slick, particularly when wet, over the entire distance. This showing met the foundational requirement of sufficient similarity to permit testimony concerning the fire truck's slipping off the road at the October 1972 accident scene, and Gibson's testimony concerning the slick condition of U.S. 150 west of Galena. Admission of such evidence was not error.

*Issue Four*

■ State next contends the evidence was insufficient to support the verdicts. It confines its arguments to the question of liability, asserting the evidence was insufficient to show any negligence in the design, construction, or maintenance of the highway which proximately caused Ervin Willian's injuries, and further contends the cause of the collision was Ingram's operating an unsafe vehicle.

We must remind the state of the well established rule concerning our standard of review in appeals questioning the sufficiency of the evidence. We will neither weigh the evidence nor judge the credibility of witnesses. Rather, we will consider only the evidence, and reasonable inferences therefrom, most favorable to the verdict. If the judgment below is supported by evidence of probative value, we will affirm

that judgment. *Downham v. Wagner*, (1980) Ind.App., 408 N.E.2d 606, *trans. denied; Berrey v. Jean*, (1980) Ind.App., 401 N.E.2d 102.

Viewed from the perspective of our standard of review, we cannot say the evidence is insufficient to support the verdicts. The evidence established the method of crack sealing, that the road was thereby rendered extremely slick when wet, that other persons had experienced problems with the slickness of the road, that skid tests showed the segment of the road in question to be dangerously slick, that water accumulated upon the road, that there were no "slippery when wet" signs in the area, the effect of "hydroplaning" upon a vehicle, and that the dangerous condition of the highway had been called to the attention of highway officials. This evidence supports the jury's determination. State's argument concerning Ingram's bald tire and that the collision was caused by Ingram's driving an unsafe vehicle is simply an invitation to reweigh the evidence and substitute our judgment for that of the jury. That we cannot do.

Judgment affirmed.

NEAL, P. J., and ROBERTSON, J., concur.