**CITY OF TELL CITY,**
**Indiana, Appellant,**

v.

**John Brian NOBLE, Appellee,**

**United States Fidelity & Guaranty Insurance Underwriters, Inc., (Third Party Defendant in the Court below and a Non-Participating Party on Appeal).**

**No. 4–1184 A 322.[1]**

Court of Appeals of Indiana,
First District.

March 10, 1986.

Rehearing Denied April 23, 1986.

Donald R. Wright, W. Scott Shrode, Lynn, Wright, Evans & Daly, Evansville, for appellant.

Gary E. Becker, Zoercher, Becker & Huber, Tell City, for appellee.

NEAL, Judge.

### STATEMENT OF THE CASE

Defendant-appellant, City of Tell City, Indiana (Tell City), suffered an adverse judgment in the amount of $300,000.00 entered pursuant to a jury verdict in the

---

**1.** This case diverted from the Fourth District by direction of the Chief Judge.

Spencer Circuit Court in favor of John Brian Noble (Noble). From that judgment Tell City appeals.

We reverse.

## STATEMENT OF THE FACTS

On July 8, 1982, at the intersection of Jefferson Street and Thirtieth Street in Tell City, Indiana, a collision occurred between a motorcycle, being ridden east on Jefferson Street by Noble, and a light truck, being driven south on Thirtieth Street by Jack M. Joyce (Joyce), as a result of which Noble was seriously injured.

Noble served Tell City his tort claim notice, pursuant to IND. CODE 34–4–16.5–7 and 9, stating that he was injured "when a 1979 Ford Bronco, owned by the Tell City Electric Department and driven by Jack M. Joyce, an employee of said department, failed to yield the right of way at this unmarked intersection with poor visibility and collided with the motorcycle driven by John Brian Noble." Thereafter, on March 22, 1983, Noble filed his complaint against Joyce and Tell City in which he asserted that Tell City was vicariously liable on account of the negligence of Joyce, who he claimed was acting within the scope of his employment with Tell City at the time of the collision. Noble alleged that Joyce's negligence consisted of his failure to yield the right-of-way, pursuant to IND. CODE 9–4–1–81 which requires the driver of a vehicle on the left side of an unmarked intersection to yield the right-of-way to the driver on the right hand side of the intersection, his failure to keep a lookout, his failure to control his vehicle, and his failure to apply his brakes. On February 14, 1984, the trial court granted Tell City's Motion for Summary Judgment under the theory of respondeat superior. Tell City was not liable because the accident occurred after Joyce's working hours and on his way home from a shopping trip, and though he was driving the City's vehicle, it was provided for him as part of his compensation. This judgment was not appealed. Pursuant to the court's permission, Noble thereafter filed an amended complaint in which

he alleged against Joyce the same acts of negligence but omitted the allegation of agency. However, he additionally alleged that Tell City was liable for "negligently and carelessly failing to provide adequate signs, markings, and traffic controls at the intersection of Jefferson Street and 30th Street in the City of Tell City, Indiana." Thus, Noble's theory became one of liability of joint tort-feasors rather than respondeat superior. Tell City filed its Motion to Dismiss claiming immunity under IND. CODE 34–4–16.5–3(6) of the Tort Claims Act, arguing that the placement of signs was a discretionary act. It also claimed inadequate notice under IND. CODE 34–4–16.5–9 of the Act. The motion was overruled.

Prior to trial, Noble settled his case against Joyce for $97,000.00 upon the execution of a covenant not to sue, and dismissed his complaint as to Joyce. The case proceeded to trial against Tell City upon the theory stated against Tell City in the amended complaint. The trial court instructed the jury, over Tell City's objection, that Tell City had a duty to exercise reasonable care in constructing, designing and maintaining its streets, which included the duty to erect STOP signs or warning signs at intersections where they were warranted, and that for a breach of that duty Tell City would be liable for damages. Noble presented evidence that a STOP sign should have been placed at the northwest corner of the intersection. There was also evidence that a comprehensive ordinance existed which delineated intersections in Tell City which should be marked. However, the intersection of Jefferson Street and Thirtieth Street was not included therein.

## ISSUES

Tell City presents nine issues for review. Since we reverse on Issue I, which is dispositive of this litigation, we shall address only that issue. Issue I is as follows:

Whether the decision by defendant-appellant to allow the intersection where the accident occurred to remain unmarked

was a performance of a discretionary function by a government entity, and as a result thereof, whether the defendant is immune from liability pursuant to IND. CODE 34–4–16.5–3.

## DISCUSSION AND DECISION

An examination of the authorities reveals that the question of whether the failure to erect a STOP sign or other traffic markers is a discretionary act, thus affording the governmental entity immunity under IND. CODE 34–4–16.5–3(1), has never been squarely faced and decided. Therefore, a complete analysis of the subject is necessary.

The immunity section of the Tort Claims Act, IND. CODE 34–4–16.5–3, reads in pertinent part as follows:

"A governmental entity or an employee acting within the scope of his employment is not liable if a loss results from:

\* \* \* \* \* \*

(6) the performance of a discretionary function;

(7) the adoption and enforcement of or a failure to adopt or enforce a law (including rules and regulations), unless the act of enforcement constitutes false arrest or false imprisonment."

Thus, the real question is whether the decision to place or not to place a sign on a street or highway is within either of the above immunities.

A statutory scheme exists in Indiana governing the placement of traffic markers on streets, roads, and highways; the legal effect of such placement; and the enforcement of adherence to those traffic markers. That scheme is contained in IND. CODE 9–4, The Uniform Act Regulating Traffic on Highways. It applies to all highways, roads and streets, including those in residential subdivisions, regardless of who maintains them. IND. CODE 9–4–1–22. The Act requires the adoption, by the Indiana State Highway Commission, of a manual specifying a uniform system for traffic control devices for use on all roads in the state. IND. CODE 9–4–1–30. The Man-

ual, entitled The Indiana Manual on Uniform Traffic Control Devices for Streets and Highways, must be adhered to by all governmental agencies responsible for the signing, marking and erection of any traffic control device on any street or highway in the state. IND. CODE 9–4–2–1. All such devices shall conform to the standards and specifications set forth in the Manual. IND. CODE 9–4–3.1–1. Control devices and signals are defined as "[a]ll signs, markings or devices, including railroad advance warning signs, ... placed or erected by authority of a public body or official having jurisdiction, for the purpose of regulating, warning and guiding traffic." IND. CODE 9–4–1–19. Any unauthorized sign on a street or highway is forbidden. IND. CODE 9–4–1–38.

■ Although the provisions of IND. CODE 9–4 are applicable throughout the state, local authorities may adopt by ordinance additional traffic regulations with respect to streets and highways under their jurisdiction. However, any additional traffic regulation must not conflict with or duplicate the provisions of the statute. IND. CODE 9–4–1–27. "Local authorities" is defined as "[e]very county, municipal, and other local board or body having authority to adopt local police regulations under the constitution and laws of this state." IND. CODE 9–4–1–13. Such powers shall be exercised by ordinance. IND. CODE 36–1–3–6. Local authorities have the power, with respect to streets and highways under their jurisdiction and within the reasonable exercise of the police power, to regulate traffic by means of traffic control signals, to designate one-way streets, to designate any highway as a through highway, to require that all vehicles stop before entering or crossing any highway, to designate any intersection as a STOP intersection and to require that all vehicles stop at one or more entrances to a STOP intersection. IND. CODE 9–4–1–28. Thus, not only does IND. CODE 9–4–1–28 grant local authorities the power to regulate traffic when not pre-empted by the state, but it clearly contemplates, along with IND.

CODE 9–4–1–81, the continued existence of some unmarked intersections. IND. CODE 9–4–1–81 provides as follows:

"(a) When two [2] vehicles approach or enter an intersection from different highways at approximately the same time, the driver of the vehicle on the left shall yield the right-of-way to the vehicle on the right.

(b) The right-of-way rule in subsection (a) is modified at through highways and otherwise as stated in this chapter."

In regard to erecting STOP or YIELD signs, IND. CODE 9–4–1–110 provides:

"(a) The department of highways with reference to state highways, and highway routes through cities, and local authorities with reference to other highways under their jurisdiction, may, upon an engineering and traffic investigation, designate through highways and erect stop or yield signs at specified entrances thereto or may designate any intersection as a stop or yield intersection and erect like signs at one or more entrances to such intersection.

(b) Every stop sign and yield sign shall be manufactured and installed in conformance with the Indiana manual on uniform traffic control devices for roads and streets as provided under section 30[9–4–1–30] of this chapter and under IC 9–4–2–1.

(c) Every driver of a vehicle shall stop or yield in obedience to any such sign as the case may be, before entering such intersection except when directed to proceed by a police officer or traffic control signal."

 Throughout the Act it is stated in many ways and in many sections that local authorities who are responsible for roads and streets may, pursuant to an engineering and traffic investigation, determine by ordinance that traffic should be regulated and signs posted. *See, e.g.,* IND. CODE 9–4–1–70 concerning hazardous passing; IND. CODE 9–4–1–75 concerning turning; IND. CODE 9–4–1–71 concerning one-way streets; IND. CODE 9–4–1–74 concerning the regulation of freeways; IND. CODE 9–4–1–83 concerning *STOP* and *YIELD* signs at through highways; and IND. CODE 9–4–1–86 concerning pedestrians at cross walks. In addition, adherence to official traffic control devices is mandated by statute. IND. CODE 9–4–1–33. In fact, disobedience to signs posted in accordance with the various statutory sections is either a Class C misdemeanor or a Class C infraction. IND. CODE 9–4–1–127. Throughout the statutes cited above, the granting of traffic control powers to the State Highway Commission and to local authorities is preceded by the word "may." The word "may" ordinarily indicates a permissive condition and discretion. *Noble v. City of Warsaw* (1973), 156 Ind.App. 618, 297 N.E.2d 916, *trans. denied.* As the Manual so states " 'MAY' is meant to be a permissive and not mandatory condition. No specific requirements are intended in the design or use of the device." Manual on Uniform Traffic Control Devices for Streets and Highways, Sec. 1A–5, p. 1A–4 (1981 ed.).

The Manual, *supra,* at 2B–2 states that: "[b]ecause the STOP sign causes a substantial inconvenience to motorists, it should be used only where warranted. A STOP sign *may* be warranted at an intersection where one or more of the following conditions exist:

(1) Intersection of a less important road with a main road where application of the normal right-of-way rule is not recommended by field investigation.

(2) Street entering a through highway or street.

(3) Unsignalized intersection in a signalized area.

(4) Other intersections where a combination of high speed, restricted view and accident record *may* indicate a need for control by the STOP sign."

(Our emphasis.)

Should the legislature have intended to make the placing of STOP signs mandatory, it would have used the word "shall." *See Sharton v. Slack* (1982), Ind.App., 433 N.E.2d 856. Of course it would have been impractical for the legislature to do so,

since the signing of streets and highways clearly requires judgment and discretion.

Though *Campbell v. State* (1972), 259 Ind. 55, 284 N.E.2d 733, abolished governmental immunity, it did not pretend to abolish all immunity. Governmental entities remain immune from liability, for, among other things, judicial acts, legislative acts, and discretionary acts. IND. CODE 34-4-16.5-3 contains fifteen specifications of immunity under the Tort Claims Act, and includes those vestiges of immunity yet remaining after *Campbell.* Subsections (6) and (7) recited above are included.

The common law distinction between "discretionary" and "ministerial" acts was well described in *Adams v. Schneider* (1919), 71 Ind.App. 249, 124 N.E. 718, 720:

"A duty is discretionary when it involves on the part of the officer to determine whether or not he should perform a certain act, and, if so, in what particular way, and in the absence of corrupt motives in the exercise of such discretion he is not liable. His duties, however, in the performance of the act, after he has once determined that it shall be done, are ministerial, and for negligence in such performance, which results in injury, he may be liable in damages." (Citations omitted.)

If the duties imposed are of a legislative or judicial nature, or depend on judgment, the public entity is not responsible in damages either for failing to perform or error in performance. *Brinkmeyer v. City of Evansville* (1867), 29 Ind. 187.

Many different rules have been formulated by the authorities on the subject. They apply various tests as to whether the public agency or department responsible for the tortious conduct is legislative or administrative in nature. Some are as follows: whether the act was discretionary or ministerial; whether the act was performed by persons whose offices were created either by the legislature or by the municipality; whether duties of the agency or department the Act included were mandatory or merely permissive under the enabling legislation. *See City of Kokomo v. Loy* (1916),

185 Ind. 18, 112 N.E. 994. Each case must be determined under a true interpretation of the statute under which the governmental entity was created and under a proper conception of the power and duties delegated to it. The foregoing tests seem to have been adopted by past cases. *See City of Hammond v. Cataldi* (1983), Ind.App., 449 N.E.2d 1184; *Maroon v. State of Indiana Department of Mental Health* (1980), Ind. App., 411 N.E.2d 404, *trans. denied; Mills v. American Playground Device Co.* (1980), Ind.App., 405 N.E.2d 621, *on rehearing,* (1981) 427 N.E.2d 1130. *See also Board of Commissioners of Delaware County v. Briggs* (1975), 167 Ind.App. 96, 337 N.E.2d 852, *on rehearing* (1976) 167 Ind.App. 96, 340 N.E.2d 373; *Wallace v. Feehan* (1934), 206 Ind. 522, 190 N.E. 438.

As applied to streets and highways, the decisions regarding immunity lack uniformity and have failed to directly address the specific issue before us. *Briggs, supra,* the facts of which occurred after *Campbell, supra,* but before the effective date of the Tort Claims Act, involved a STOP sign which had once been erected but had since fallen into disrepair. The court noted that "[o]nce the decision was made to place the signs at the intersection, the subsequent placement and maintenance of the signs was purely a ministerial act...." *Briggs* at 863. The court went on to state that:

"[I]f one undertakes to do a discretionary act, the performance of the act is a purely ministerial function, and for negligence in such performance that results in injury, there may be liability for damages. Having decided to place a sign at the intersection, the County had a duty to maintain the sign until such time as it exercises further discretion to remove or replace the sign with a more appropriate one...."

*Briggs, supra,* at 867.

Though *Briggs* involved only the maintenance of a traffic sign, it clearly inferred that the decision to place the signs was a discretionary act.

In a case somewhat similar to *Briggs, Harvey v. Commissioner of Wabash*

*County* (1981), Ind.App., 416 N.E.2d 1296, the inference that the decision to erect a traffic control device is a discretionary act was even clearer. *Harvey* involved a YIELD sign that, although apparently erected and maintained properly, failed to conform to the Manual's color, size and height requirements. After quoting with approval pertinent portions of the *Briggs* decision, the *Harvey* court noted that "[t]he act of placing a [traffic control] sign thus changes the essential legal character of a county's liability." *Id.* at 1300. The court went on to hold that adherence to the Manual's physical specifications regarding YIELD signs is a ministerial rather than a discretionary duty.

Although dicta, the view that the decision to install traffic control devices is a discretionary act was flatly stated in *Smith v. Cook* (1977), 172 Ind.App. 610, 361 N.E.2d 197. In that case Judge Robertson noted that "[t]he Manual plainly makes the decision to utilize many such devices [traffic control devices] discretionary. Some examples are the use of a STOP sign or a YIELD sign...." *Id.* at 201.

Cases exist which state as a general principle of law that a governmental entity has no absolute duty to provide signs, and that such a duty is discretionary. However, other cases conclude that the State *does* have a more general duty to exercise reasonable care in the design, construction and maintenance of its highways for the safety of the public. Such expressions are found in *State v. Edgman* (1983), Ind.App., 447 N.E.2d 1091, *trans. denied; Hurst v. Board of Commissioners of Pulaski County* (1983), Ind.App., 446 N.E.2d 347, *aff'd. on other grounds*, (1983) 476 N.E.2d 832; *City of Indianapolis v. Swanson* (1982), Ind.App., 436 N.E.2d 1179, *on rehearing*, 439 N.E.2d 638, *rev'd. on other grounds*, (1983) 448 N.E.2d 668; *State v. Thompson* (1979), 179 Ind.App. 227, 385 N.E.2d 198, *trans. denied;* and *Elliott v. State* (1976), 168 Ind.App. 210, 342 N.E.2d 674, *trans. denied.*

*Elliott, supra*, was a pre-Tort Claims Act case where the alleged negligence was the failure to erect warning signs. Immunity was not raised and was not at issue. In *Swanson, supra*, the issue of immunity was not raised either, rather the issue was the appropriateness of a jury instruction. In *Hurst, supra*, there was no issue of immunity, and the question only concerned the duty of a county to mow weeds. In *Edgman*, seventeen issues were presented for review; none dealt with the question of immunity. Of the above cases, only in *Thompson, supra*, was the theory of immunity argued.

Other non-highway cases involving immunity are instructive. In *Maroon, supra*, immunity was denied where the Indiana Department of Mental Health negligently permitted an inmate to escape. We held that the decision to commit the patient was discretionary, while the failure to keep him in custody was not. In *Crouch v. Hall* (1980), Ind.App., 406 N.E.2d 303, the failure to investigate a crime was held discretionary and therefore immunity existed. In *Mills, supra*, where the city established a park and equipped it accordingly, the court held that the decision to establish the park and equip it was a discretionary function, but once it opted to do so, the city had a duty to keep it reasonably safe. The court stated that the distinction between discretionary and ministerial acts hinges upon the decision to act, and the duties flowing from that decision.

Finally, the case of *Cataldi, supra*, is helpful. The plaintiff charged that the city was negligent in fighting a fire, which destroyed his restaurant, in the following particulars: (1) failing to provide sufficient personnel; (2) failing to properly train the personnel; (3) failing to have adequate equipment on hand; and (4) using negligent methods to fight the fire. The city raised the issue of immunity, arguing that the acts were a discretionary function under IND. CODE 34–4–16.5–3(6). The court, citing *Adams, supra*, said:

"Several allegations of the amended complaint concern negligence in training and supervision. Our Supreme Court has stated:

'Clearly, the employment and supervision of deputies and employees in governmental offices, including the prosecutor's office, is a discretionary function.'

Therefore, these allegations involve discretionary duties and the city is not liable for any loss resulting from their performance.

We disagree with the Cataldis' analysis that once the decision was made to fight the fire, all further actions were ministerial. First, the definition of a discretionary duty includes the determination of how an act should be done *Adams v. Schneider, supra.* Second, the actions alleged to be negligent required the exercise of judgment by the fire department and by the fire fighters. The Fourth District of this Court considered and rejected a similar argument with respect to police investigation of a crime because[:]

'[S]uch an analysis belittles the judgments that must be made by police officers concerning methods of investigation, quantum of evidence necessary for arrest, timing of arrest and the like.'

Likewise, decisions as to how to fight a particular fire require that judgments be made regarding appropriate methods and techniques for the unique situation presented by that fire. Although it is possible that ministerial actions may be taken in the course of fire fighting, the plaintiffs' allegations do not indicate that the actions they complain of were not discretionary. Therefore, the city is immune from liability as a matter of law and summary judgment should be entered in its favor." (Some citations omitted.)

*Cataldi, supra,* at 1187.

As seen in *Cataldi,* the act of establishing a fire department did not exhaust the city's discretion, but rather discretion flowed into many aspects of the fire department.

■ After analyzing the above material, we find that the alleged negligent act in the instant case was Tell City's failure to erect traffic control devices at the intersec-

tion in question. We are not dealing with an assertion of faulty maintenance, or an assertion that the physical aspect of the signs did not meet the manual's specifications. Nor are we dealing with an assertion that the alleged negligent act was committed by a workman, by a maintenance crew foreman, or even by the director of the street department. We are dealing with an act of the governing body itself. Under IND. CODE 9–4, as discussed above, the decision to erect traffic control devices is to be made by ordinance of the city council and therefore the decision is legislative, as well as penal in nature. Neither the statutes nor the Manual create any mandatory duty in that regard, rather the how, what and where of traffic control device placement is addressed to the discretion of the city council. Such an act by a city council is both legislative and discretionary. Non-action is likewise legislative and discretionary.

Therefore, under the plain meaning of IND. CODE 34–4–16.5–3(6) and (7), Tell City is immune from liability for its decision not to erect a traffic control device at the intersection in question. If IND. CODE 34–4–16.5–3(6) and (7) are not applicable here, we are at a loss as to where they would be applicable. A contrary decision would emasculate the tort claim immunity statute.

As shown by the analysis, no case has squarely faced the question of immunity for the erection or non-erection of traffic control devices under IND. CODE 34–4–16.5–3(6) and (7). It is clear from the Act that the legislature delegated to the legislative bodies of local authorities the duty of marking streets and highways within their jurisdictions, and therefore, by necessity, has clothed them with great discretion. We perceive that it was not the intent of the legislature to permit a lay jury to second guess the acts of local authorities. We reject the suggestion that the broad statements contained in *Elliott, supra, Swanson, supra, Hurst, supra,* and *Thompson, supra,* regarding the state's general duty to exercise reasonable care in the design,

construction and maintenance of highways, overrides specific statutory provisions.

For the above reasons, this cause is reversed and the trial court is ordered to enter judgment for Tell City.

Judgment reversed.

ROBERTSON, P.J., concurs.

RATLIFF, J., concurs with opinion.

RATLIFF, Judge, concurring.

The notice given to the City by Noble pursuant to the requirements of the Indiana Tort Claims Act, Indiana Code section 34–4–16.5–7 and 9, was inadequate to apprise the City of any claim being made based upon the City's failure to erect a stop sign at the intersection.

Compliance with the statutory notice requirements of the Tort Claims Act is a procedural prerequisite to recovery against a governmental entity. *Hedges v. Rawley* (1981), Ind.App., 419 N.E.2d 224, *trans. denied.* Failure to give a timely notice to a governmental entity is a jurisdictional bar to maintaining a tort action against the entity. *Teague v. Boone* (1982), Ind.App., 442 N.E.2d 1119.

The notice given here made no mention whatever of the failure of the city to erect a stop sign at the intersection as a causal factor or as a basis for Noble's right of recovery against the city. Rather, the notice referred only to the failure of the city's employee to yield the right of way at an unmarked intersection. Although substantial compliance with the notice requirements of the Tort Claims Act is sufficient where the purpose of the notice requirement is satisfied, *Burggrabe v. Board of Public Works of the City of Evansville* (1984), Ind.App., 469 N.E.2d 1233, *trans. denied,* a notice which is in effect no notice of the claim asserted in the suit filed cannot, and does not suffice.

In *Hedges v. Rawley* (1981), Ind.App., 419 N.E.2d 224, *trans. denied,* we held that an action for slander against the City of Terre Haute and its sewage treatment plant superintendent, predicated upon an alleged republication of defamatory matter could not be maintained because letters which purported to constitute the tort claims notice made no mention of any republication of the slander. *Hedges* is controlling here. There was no notice given concerning the failure to erect a stop sign, hence, no action can be maintained against the City on that ground.

Because this case can be decided on the basis that no proper Tort Claims notice was given, and the judgment must be reversed on that ground, we do not need to decide the immunity issue which forms the basis of the majority opinion.

Assuming we are required to decide the immunity issue, I limit my concurrence to the narrow issue that the determination either to erect or not erect a stop sign at the intersection in question was a discretionary act and thereby immune under Indiana Code section 34–4–16.5–3. In other words, the decision of whether or not traffic control or regulatory devices such as stop signs and yield signs should be erected at a given location is discretionary. On the other hand, the installation of warning signs at dangerous locations well may be a purely ministerial act. *State v. Magnuson* 488 N.E.2d 743 (1986). *Magnuson* involved the widening of a highway leaving a culvert protruding into the traveled portion. There, we held the decision to widen the highway was discretionary but that the installation of signs or devices to warn of the protruding culvert was ministerial. Likewise, in *State v. Willian* (1981), Ind.App., 423 N.E.2d 668, we stated that among the evidence supporting a finding of negligence in the design, construction, or maintenance of the highway in question was that there were no "slippery when wet" signs in the area. *Willian,* 423 N.E.2d at 673. Subject to the limitation which I have expressed, I concur in the determination that the City's decision not to erect a stop sign at the intersection in question was a discretionary act.