**BOARD OF COMMISSIONERS OF the COUNTY OF STEUBEN, Indiana, Appellant,**

v.

**Ronald HOUT and Pamela Hout, Appellees.**

**No. 3–1285–A–345.**

Court of Appeals of Indiana, Third District.

Sept. 22, 1986.

Rehearing Denied Nov. 21, 1986.

William E. Borror, Hunt, Suedhoff, Borrow & Eilbacher, Fort Wayne, for appellant.

John Feighner and Sherrill Wm. Colvin, Snouffer, Haller & Colvin, Fort Wayne, for appellees.

STATON, Presiding Judge.

The Board of Commissioners of Steuben County, Indiana, appeal the denial of their motion for summary judgment against Ronald and Pamela Hout. The Board argues that its decision not to place a warning sign at an intersection was a discretionary function for which it is immune from liability under Indiana's Tort Claims Act.

We reverse.

On the evening of September 10, 1982, Ronald Hout and his wife, Pamela, were driving east on County Road 150 in Steuben County, Indiana. As Ronald drove over the crest of a hill, he saw a "T" intersection approximately 100 to 200 feet away. He was unable to stop the car and crashed into the metal guardrail at the intersection, damaging his car and injuring Pamela.

The Houts sued the Board, alleging that it negligently failed to place a warning sign for motorists approaching the intersection. The Board moved for summary judgment on the ground that the decision not to place a warning sign before the approach to the intersection was a discretionary function, protected from liability by the Indiana Tort Claims Act, at Ind.Code 34-4-16.5-3(6). The trial judge denied the Board's motion, concluding, in part:

> that the acts of county highway administrators in determining the nature of the signing that they should or should not do is not the performance of a discretionary function in a sense of exercising sovereign power, but that it is a discretionary function which must be performed as a reasonable man and for failure of which liability follows as in any other negligence claim.

(Record, at 52).

In reviewing the denial of summary judgment, we will apply the same standard as that applied by the trial court. Summary judgment is appropriate only if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *City of Hammond v. Cataldi* (1983), Ind.App., 449 N.E.2d 1184, 1186.

The Indiana Tort Claims Act provides, at IC 34-4-16.5-3(6):

> A governmental entity or an employee acting within the scope of his employment is not liable if a loss results from:
>
> \*     \*     \*     \*     \*     \*
>
> (6) the performance of a discretionary function;

Unlike the trial court's order, quoted above, the statute makes no distinction between the discretionary exercise of "sovereign" power, for which there can be no liability, and other discretionary functions from which liability may result. Thus, we must determine whether the placement of warning signs is, in fact, a discretionary function within the meaning of IC 34-4-16.-5-3(6), and if so we must reverse the denial of summary judgment.

The common law distinction between discretionary and ministerial functions is instructive:

> A duty is discretionary when it involves on the part of the officer to determine whether or not he should perform a certain act, and, if so, in what particular way, and in the absence of corrupt motives in the exercise of such discretion he is not liable. His duties, however, in the performance of the act, after he has once determined that it shall be done, are ministerial, and for negligence in such performance, which results in injury, he may be liable in damages.

*Adams v. Schneider* (1919), 71 Ind.App. 249, 124 N.E. 718, 720. Ministerial acts have also been described as acts "which a person performs in a given state of facts in a prescribed manner, in obedience to the mandate of legal authority without regard to, or the exercise of, his own judgment upon the propriety of the act being done." *State Dept. of Mental Health v. Allen* (1981), Ind.App., 427 N.E.2d 2, 4.

The placement of traffic signs in Indiana is governed by The Uniform Act Regulating Traffic on Highways, at Ind.Code 9–4. Under the Act, the Indiana State Highway Commission must adopt a manual setting out a uniform system for traffic control devices, which must be adhered to by all governmental agencies responsible for signing and marking streets and highways within the state. IC 9–4–1–30; IC 9–4–2–1. This manual is entitled The Indiana Manual on Uniform Traffic Control Devices for Streets and Highways.

Although the Manual is binding upon all governmental agencies responsible for traffic control signs and devices, it does not render every decision or act concerning such signs and devices ministerial. In its introduction and general provisions, the Manual itself states that it "shall not be construed as an instrument to mandate the use of any of the control devices or procedures at a particular location." Manual, at 1A–1. Concerning warning signs, the Manual states, at 2C–1, "In all cases engineering judgment, based on field conditions, shall be the controlling factor in determining the need, use, location, type, etc., of any warning sign." Thus, the Manual seems to vest individual government agencies with great discretion in determining where traffic signs are needed and which kinds are appropriate, while binding them to uniform requirements as to size, color, and location once the initial determination to use a sign is made. Indeed, the Manual itself, at 1A–5, states that "the 'SHALL' stipulation indicates that *when* the device is used that the requirements stated shall be met." (Originial emphasis).

A line of cases has developed recognizing this distinction between the decision to use a sign at a particular location and its subsequent placement and maintenance. In *Board of Comm'rs of Delaware County v. Briggs* (1975), 167 Ind.App. 96, 337 N.E.2d 852, *reh. denied* (1976), 167 Ind.App. 96, 340 N.E.2d 373, the county board of commissioners had erected a warning sign at a "Y" intersection but failed to replace it when it was knocked down. The court wrote, "Once the decision was made to place the signs at the intersection, the subsequent placement and maintenance of the signs was a purely ministerial act ..." *Id.,* 337 N.E.2d at 863. The inference is clear that the initial decision was discretionary. Later cases also suggested in dicta that this was so. See *Smith v. Cook* (1977), 172 Ind.App. 610, 361 N.E.2d 197, 201; *Harvey v. Commissioners of Wabash County* (1981), Ind.App., 416 N.E.2d 1296, 1300.

Finally, in *City of Tell City v. Noble* (1986), Ind.App., 489 N.E.2d 958, *trans. pending,* the First District was squarely presented with the issue whether the initial decision concerning the use of a traffic sign is discretionary. The plaintiff, who was injured when a truck collided with his motorcycle at an unmarked intersection, alleged that Tell City negligently failed to provide "adequate signs, markings, and traffic controls" at the intersection. *Id.,* at 959. The First District reversed judgment against Tell City, holding that the decision whether to place stop or yield signs at the intersection was a discretionary function for which Tell City could not be liable.

Were this the only caselaw concerning highways and traffic signs, our resolution would be clear. It requires no real extension of the reasoning in *Tell City* to find that the decision whether to place a warning sign at a "T" intersection is a discretionary function protected under the Tort Claims Act. The issue is clouded by a line of cases which state, as a general principle, that governmental agencies have a general duty to exercise reasonable care in the design, construction, and maintenance of their highways for the safety of the public. *See, e.g., Elliott v. State* (1976), 168 Ind.

App. 210, 342 N.E.2d 674, *trans. denied; State v. Thompson* (1979), 179 Ind.App. 227, 385 N.E.2d 198; *Hurst v. Board of Comm'rs of Pulaski County* (1983), Ind. App., 446 N.E.2d 347. In the great majority of these cases, however, the applicability of the Tort Claims Act was not in issue, and the First District held in *Tell City* that such general statements about a general duty cannot override specific statutory provisions giving highway authorities discretion in the use of traffic signs. *Tell City, supra,* 489 N.E.2d 964–65.

While it was clear to the First District in *Tell City* that decisions regarding the use of stop and yield signs are discretionary, the matter was not so clear with regard to warning signs. In *Peavler v. Board of Comm'rs,* (1986), Ind.App., 492 N.E.2d 1086, *trans. pending,* (Neal, J., dissenting), decided just two months after *Tell City,* the First District held that "the installation of *warning signs* at dangerous locations may be a ministerial act." *Id.,* at 1089. (Original emphasis).

The plaintiff in *Peavler* was injured in an accident at a curve, and alleged that the County negligently failed to place curve warning signs, reduced speed limit signs, or advisory speed signs at the curve. Judge Ratliff, who had limited his concurrence in *Tell City* to the issue of stop signs and yield signs, authored the majority opinion in *Peavler,* and wrote that it was error to instruct the jury that any duty on the part of the county to post a curve warning sign was wholly discretionary. Whether the placement of warning signs at a particular location was discretionary or ministerial depends on whether the location is dangerous, he wrote, and the issue of dangerousness is for the jury to decide. *Id.,* at 1089–90.

Judge Ratliff noted the general duty of governmental agencies to exercise reasonable care in designing, constructing, and maintaining their roadways. *Id.,* at 1088–89. He also cited two First District cases recognizing such a duty which peripherally involved traffic signs as well. In *State v. Willian* (1981), Ind.App., 423 N.E.2d 668,

the plaintiff, who was injured when another car slid across a highway in the rain and struck his car, sued the state for negligent design, construction, or maintenance of the highway. The First District listed the absence of "slippery when wet" signs among the evidence that supported the jury's verdict against the state; admissibility of evidence of the absence of signs was not at issue. In *State v. Magnuson* (1986), Ind. App., 488 N.E.2d 743, the plaintiff struck a culvert after swerving to avoid another automobile. The culvert headwall extended 1.3 feet into the travelled portion of the highway, which had been widened the year before. Plaintiff sued the state, alleging negligence in failing to place a guardrail around the culvert or remove it from the travelled portion of the highway. Although a "narrow bridge" sign had been placed at the site, and thus the issue of failure to erect a warning sign was not before it, the court stated that "the decision to widen the highway in question was discretionary and the installation of signs or devices to warn of the intrusion of the culvert into the travel lane was a ministerial act." *Magnuson, supra, Id.,* at 747.

The conflict between the cases recognizing a duty to use reasonable care in the design, construction, and maintenance of highways, and the cases recognizing that the use of traffic signs is discretionary is a difficult one to resolve, particularly because warning signs can correct problems resulting from faulty design, construction, or maintenance. Decisions concerning traffic signs are clearly interrelated with other work on the roads themselves.

Simply fixing a point in time at which all discretion in roadwork is exhausted, however, as the First District did in *Magnuson, supra,* does not solve the problem before us. We must look at the nature of the particular function in question, and determine whether it involves a determination as to whether a certain act should be performed, and if so, how. *Adams v. Schneider, supra. See also Crouch v. Hall* (1980), Ind.App., 406 N.E.2d 303, 304, *trans. denied; Hammond v. Cataldi, su-*

pra, 449 N.E.2d at 1187; and *Tell City, supra,* 489 N.E.2d at 964. The Uniform Act Regulating Traffic on Highways and The Indiana Manual on Uniform Traffic Control Devices for Streets and Highways, quoted above, clearly make the use of traffic signs, including warning signs, discretionary. According to the Manual, "engineering judgment, based on field conditions, should be the controlling factor in determining the need, use, location, type, etc., of any warning sign." Manual, at 2C–1. This is hardly a description of a ministerial function.

We cannot agree with the holding in *Peavler* that the installation of warning signs at dangerous locations may be a ministerial act. To recognize such an exception, and particularly to make dangerousness a jury question, is to allow the sort of second guessing by lay juries that the First District rejected in *Tell City* with regard to stop and yield signs. 489 N.E.2d at 964.

We see no distinction in the Act or the Manual between stop and yield signs and warning signs. The passages quoted above indicate the legislature's intent to give individual highway authorities discretion in the use of warning signs, just as in the use of other signs. The Manual lists a number of "typical locations and conditions which *may* be considered for the use of warning signs." Manual, at 2C–1. (Emphasis added). As the Manual states " 'MAY' is meant to be a permissive and not a mandatory condition. No specific requirements are intended in the design or use of the device." Manual, at 1A–5 (quoted in *Tell City,* 489 N.E.2d at 961).

We see no other valid reason to distinguish warning signs from stop or yield signs. An unmarked intersection which needs a stop or yield sign could be just as dangerous as an intersection which needs a warning sign. Neither do we see any reason to distinguish between decisions about the use of warning signs and the performance of any other function which has been recognized as discretionary. Surely fire fighters encounter dangerous situations, and their errors in judgment can have

grave consequences, yet we recognize no "dangerousness" exception for their activities. *See Hammond v. Cataldi, supra.* The same is true with regard to police officers who fail to investigate a violent crime, with the result that a second such crime is perpetrated. *See Crouch v. Hall, supra.*

We cannot agree with the First District that decisions concerning the use of warning signs at dangerous locations may be ministerial. The legislature, through the Uniform Act Regulating Traffic on Highways and The Indiana Manual on Uniform Traffic Control Devices for Streets and Highways, has given government agencies discretion in the use of traffic signs, including warning signs. Through the Indiana Tort Claims Act it has shielded governmental entities from liability for loss resulting from the performance of a discretionary function. The legislature has left no room for an exception based on the dangerousness of the location at which a sign is alleged to have been needed, and we cannot recognize such an exception.

We find the Board of Commissioners of Steuben County immune from liability in this action as a matter of law, and reverse the trial court's denial of summary judgment in favor of the Board.

HOFFMAN and GARRARD, JJ., concur.