**CITY OF INDIANAPOLIS and Department of Transportation of the City of Indianapolis, Defendants-Appellants,**

v.

**Kimberly A. CONSTANT, Plaintiff-Appellee.**

**No. 1–1085A266.**

Court of Appeals of Indiana, First District.

Oct. 30, 1986.

Rehearing Denied Dec. 18, 1986.

Thomas J. Campbell, Chief Litigation Counsel, Randall C. Helmen, Asst. Corp. Counsel, City-County Legal Div., Indianapolis, for defendants-appellants.

Joseph R. Woods, John P. Woods, Indianapolis, for plaintiff-appellee.

NEAL, Judge.

## STATEMENT OF THE CASE

Defendant-appellants, City of Indianapolis and its Department of Transportation (City), suffered an adverse judgment in the amount of $300,000.00, entered pursuant to a jury verdict in the Hendricks Circuit Court in favor of plaintiff-appellee, Kimberly A. Constant (Constant). From that judgment City appeals.

We reverse.

## STATEMENT OF THE FACTS

On January 22, 1981, at the intersection of Emerson Avenue and Churchman Avenue in Marion County, a collision occurred between a car driven by Constant and a car driven by Walter Naylor, Jr. Constant had been traveling southbound on Emerson and had entered the left turn lane at the intersection, intending to proceed east on Churchman. As it crossed Emerson, Constant's car was struck by the northbound Naylor vehicle. Constant was seriously injured as a result of the accident.

Constant filed her complaint on January 10, 1983, naming Walter Naylor, Jr., Walter Naylor, Sr., who had filed a financial liability agreement with the Bureau of Motor Vehicles, and the City as defendants.[1] Constant alleged negligence on the part of Walter Naylor, Jr., and that the City negli-

gently failed to erect a left turn arrow signal for southbound traffic at the intersection. The Naylors filed counterclaims on February 28, 1983. On February 21, 1985, the City filed its Motion for Summary Judgment, asserting that, because decisions regarding the placement of traffic signals are discretionary acts, the City was immune from liability. The City also claimed that Constant was contributorily negligent as a matter of law for turning into the path of the Naylor vehicle. The trial court denied this motion.

Constant and the Naylors compromised and dismissed their claims against each other, but she proceeded to trial against the City. The trial began on June 25, 1985. At the conclusion of Constant's presentation of evidence, and again at the conclusion of all the evidence, the City moved for a judgment on the evidence. The trial court denied both motions. On June 28 the jury returned a verdict against the City in the amount of $750,000.00. Because the Indiana Tort Claims Act provides a limitation on liability of $300,000.00 the jury verdict was reduced to that amount. IND. CODE 34-4-16.5-4. The City appeals from this judgment.

## ISSUES

Four issues are presented for review. Since we reverse on the dispositive issue, we will address only that issue. It is as follows:

Whether the trial court erred when it denied the City's motions for summary judgment and judgment on the evidence, because the City's decision not to install a left turn arrow signal is a discretionary act rendering the City immune from liability pursuant to IND. CODE 34-4-16.5-3.

## DISCUSSION AND DECISION

The City claims that the trial court erred when it denied the motions for summary judgment and judgment on the evidence.

---

1. Although the intersection is located within the City of Beech Grove, it is under the jurisdiction and control of the City of Indianapolis. IND. CODE 36-3-5-4(a).

As a basis for this argument, the City maintains that the decision whether or not to install traffic control devices is a discretionary function and, as such, the City is immune from liability for any injuries allegedly resulting from the exercise of that discretion, pursuant to the applicable section of the Indiana Tort Claims Act, IND. CODE 34–4–16.5–3. The City cites a recent decision of this court, *City of Tell City v. Noble* (1986), Ind.App., 489 N.E.2d 958, *trans. denied*, as support for its argument.

The immunity section of the Indiana Tort Claims Act, IND. CODE 34–4–16.5–3, reads in pertinent part as follows:

"A governmental entity or an employee acting within the scope of his employment is not liable if a loss results from:

\*     \*     \*     \*     \*     \*

(6) the performance of a discretionary function;

(7) the adoption and enforcement of or failure to adopt or enforce a law (including rules and regulations), unless the act of enforcement constitutes false arrest or false imprisonment. . . ."

Subsequent to the trial in the instant case, this court rendered its decision in *City of Tell City v. Noble, supra.* In *Tell City, supra,* this court decided the question of whether the decision by a governmental entity not to erect traffic control devices at a particular intersection is a discretionary act, thus affording the governmental entity immunity under the above statute. Because it was the first time the issue had been faced, we undertook a detailed examination of Indiana law regarding the extent of the immunity provided governmental entities by the Indiana Tort Claims Act, particularly as that immunity has been applied to governmental acts concerning streets and highways. The reader is directed to that case and we will not repeat that analysis here. *Tell City* also set forth the statutory scheme governing the placement, legal effect, and enforcement of traffic control devices, as provided by IND. CODE 9–4, the Uniform Act Regulating Traffic on Highways. Although the Act has a statewide application, we noted that local authorities have the power, with respect to streets and highways under their jurisdiction and within the reasonable exercise of the police power, to regulate traffic by means of control signals. *Tell City, supra,* at 960. Indeed, no signal can ever be installed except by ordinance of a governmental entity. IND. CODE 9–4–1–38. We then held that, since the word "may," which indicates a permissive condition and discretion, is used throughout the statute granting the regulatory power, decisions regarding the erection or non-erection of traffic control devices at particular intersections were discretionary and regulatory, as opposed to ministerial, acts. *Tell City, supra,* at 964. Therefore, the City of Tell City was immune from liability for its decision not to erect a STOP sign at a certain intersection, despite Noble's claim that the absence of such a sign caused the accident in that case.

In her complaint Constant specifically alleged that the City was negligent, and therefore liable, when it decided not to install an electric protected left turn arrow signal for southbound traffic at the Emerson-Churchman intersection. "Protected," in this sense, means that northbound traffic would be stopped by a circular red signal, allowing southbound traffic wanting to turn left to do so for the duration of the arrow signal. Emerson Avenue is generally a median-divided road with two northbound and two southbound traffic lanes. In addition, at its intersection with Churchman Avenue, Emerson has separate left turn lanes for both north and southbound traffic. Evidence at trial showed that the Mayor of Beech Grove, who had no jurisdiction or control over the intersection, had written two letters, one in 1977 and the other in 1979, to the City's transportation department regarding a slight curve and depression north of the intersection which caused a vision obstruction for northbound vehicles making left turns at the intersection. In response to each letter, the City conducted engineering studies to determine whether corrective measures were necessary. The 1977 study concluded that a

protected left turn arrow signal was not warranted for either northbound or southbound traffic. The study conducted two years later determined that a protected left turn arrow signal might help prevent accidents involving northbound vehicles making left turns. As a result, this type of traffic control device was installed at the intersection in October 1979. Constant maintains that the mayor's letters gave the City notice of the intersection's allegedly dangerous condition; thus, when the City installed the protected left turn arrow for northbound traffic, it had a ministerial, not a discretionary, duty to fully remedy the situation and install an identical signal for southbound traffic. Stated more briefly, she argues once the City made the decision to install traffic control devices at the intersection, the nature of the City's duty became ministerial, rather than discretionary. She then asserts that it is this characterization of the duty as ministerial that distinguishes this case from *Tell City* and precludes the holding in that case from controlling our decision here. We disagree.

 The effect of governmental immunity regarding discretionary functions is that it will prevent liability even in a situation where negligence might otherwise be clearly established. *See Jacobs v. City of Columbus* (1983), Ind.App., 454 N.E.2d 1253. As discussed above, in *Tell City* this court determined that the decision of a governmental entity whether or not to place certain traffic control devices at a particular intersection is a discretionary and regulatory act, thus affording immunity. *Tell City, supra*, at 964. It is when a traffic control or regulatory sign is placed at a location that the legal character of liability becomes ministerial rather than discretionary, thereby creating a duty to reasonably maintain the sign. *Harvey v. Board of Comm'rs of Wabash County* (1981), Ind.App., 416 N.E.2d 1296. However, as in *Tell City*, we are not dealing with an assertion of faulty maintenance, or

an assertion that the physical aspect of a sign did not meet statutory specifications; we are dealing again with a discretionary act of the governing body itself, the violation of which is penal in nature.[2] *Tell City, supra*, at 964. Nor are we concerned with the installation of warning signs at inherently dangerous locations, which a majority of this court has held may be a ministerial act. *Peavler v. Board of Comm'rs of Monroe County* (1986), Ind. App., 492 N.E.2d 1086 (Neal, J., dissenting on the basis that the power to erect any kind of a traffic control device, including warning signs, is a discretionary act). We see no distinction between the failure to erect a STOP sign, the subject of the dispute in *Tell City*, and the failure to install a left turn arrow signal. Both control the flow of traffic; both are penal in nature if violated.

The decision to install a left turn arrow signal for northbound traffic at the Emerson-Churchman intersection was a discretionary act, as was the decision not to install an identical signal for southbound traffic. Therefore, the City is immune from liability pursuant to IND. CODE 34–4–16.5–3(6) and (7).

This cause is reversed and the trial court is ordered to enter judgment for the City.

Judgment reversed.

ROBERTSON, P.J. concurs:

GARRARD, J. (sitting by designation), concurs.

---

2. Failure to obey a green circular or arrow signal is a Class C infraction. IND. CODE 9–4–1–35(a), –127.1(b).