**DUBOIS COUNTY BANK, As Guardian of the Estate of Thomas L. Doyle, Plaintiff–Appellant,**

v.

**CITY OF VINCENNES, Defendant–Appellee.**

No. 28A01–8706–CV–122.

Court of Appeals of Indiana, First District.

Jan. 12, 1988.
Rehearing Denied March 10, 1988.

Bruce A. Smith, Washington, for plaintiff-appellant.

Robert T. Bodkin, Roderick W. Clutter, Jr., Evansville, for defendant-appellee.

NEAL, Judge.

## STATEMENT OF THE CASE

Plaintiff-appellant, Dubois County Bank as Guardian of the Estate of Thomas L. Doyle (Doyle), appeals the decision of the Greene Circuit Court granting a motion for summary judgment in favor of defendant-appellee, City of Vincennes (City).

We affirm.

## STATEMENT OF THE FACTS

On March 19, 1984, on Chestnut Street in Knox County, a collision occurred between an automobile driven by Martha S. Oates (Oates) and a motorcycle operated by Doyle. Chestnut Street is a two-lane public thoroughfare, 33 feet in width, which runs north and south through Vincennes University. Doyle had been traveling southbound on Chestnut when his motorcycle collided into Oates's vehicle as she attempted to exit from a parking lot.

The parking lot, located on the west side of Chestnut, is owned, operated, and patrolled by Vincennes University. The lot has two exits by which motorists may gain access to Chestnut. The collision occurred at the northern-most exit. On the date of the accident parking was prohibited along the east side of Chestnut. On the west side of Chestnut, parking was prohibited only to a point eight to ten feet from the north edge of the north exit. There were no marked cross-walks, fire hydrants, or traffic control signs or devices, including warning signs, at or near the juncture of the parking lot exit and Chestnut Street. Doyle was seriously injured as a result of the accident.

Doyle filed a complaint on January 29, 1985, naming Oates, the City, and Vincennes University as defendants. In Count I of the complaint Doyle alleged negligence on the part of Oates in her operation of her automobile. Count II of the complaint alleged that the City and Vincennes University negligently failed to place curb markings of sufficient length prohibiting parking on the curb immediately north of the north parking lot exit and traffic control signs and signals at or near the exit.

Doyle compromised his claim against Oates and Vincennes University and the litigation against them was dismissed. The City filed a motion for summary judgment on January 9, 1987, asserting that the City was immune from liability because decisions regarding the placement of warning signs and curb markings indicating parking restrictions are discretionary acts. The trial court granted the motion, finding that the City's decisions to prohibit parking in the manner it had and not to install warning signs were discretionary acts for which the City was immune from liability under IND.CODE 34–4–16.5–3(6). From this judgment, Doyle appeals.

## ISSUES

Restated, the issues presented on appeal are:

I. Whether the City's decision not to install warning signs at or near the parking lot exit was a discretionary act immunizing the City from civil liability under IND.CODE 34–4–16.5–3(6).

II. Whether the City's placement of curb markings to prohibit parking within an area eight to ten feet in length immediately north of the parking lot exit violated a ministerial duty imposed by the manual to install markings a minimum of 20 feet long at the location.

## DISCUSSION AND DECISION

When reviewing the granting of a motion for summary judgment, we apply the same standard as that applied by the trial court. Summary judgment is appropriate only if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *City of Hammond v. Cataldi* (1983), Ind.App., 449 N.E.2d 1184.

Doyle claims that the trial court erred when it granted the City's motion for summary judgment. As a basis for this argument, Doyle maintains that the placement of warning signs at dangerous locations may be a ministerial act, and whether the juncture of Chestnut Street and the park-

ing lot exit was a dangerous location presented a material issue of fact. He cites *Peavler v. Board of Comm'rs* (1986), Ind.App., 492 N.E.2d 1086, (Neal, J., dissenting), as support for his argument.

The statute at issue is the immunity section of the Indiana Tort Claims Act, IND. CODE 34-4-16.5-3. It provides in pertinent part as follows:

A governmental entity or an employee acting within the scope of his employment is not liable if a loss results from:

\* \* \* \* \* \*

(6) The performance of a discretionary function;

In *City of Tell City v. Noble* (1986), Ind. App., 489 N.E.2d 958, *trans. denied*, this court decided whether the decision by a governmental entity to erect traffic control devices at a particular location is a discretionary act, thus affording the governmental entity immunity under the above statute. In that case, the plaintiff, who was injured when a truck collided with his motorcycle at an unmarked intersection, alleged that Tell City failed to provide "adequate signs, markings, and traffic controls" at the intersection. *Id.* at 959. The majority held that Tell City was immune from liability under IND.CODE 34-4-16.5-3(6) and (7) of the Tort Claims Act for its failure to erect a stop sign at a particular location because such a decision was a discretionary as well as regulatory act. Under the rationale of *Tell City* it seems apparent that the decision whether to place a warning sign at a particular location is also a discretionary act protected under the Tort Claims Act. However, the resolution of this issue has become muddied due to this court's opinion in *Peavler, supra.*

In *Peavler*, decided two months after *Tell City*, the majority distinguished between types of traffic control signs. Judge Ratliff, writing for the majority, held that "the installation of *warning signs* at dangerous locations may be a ministerial act." *Id.* at 1089. (Original emphasis.) He wrote further that whether the erection of warning signs at a particular location was discretionary or ministerial depends upon whether the location is dangerous, and the

issue of dangerousness was for the jury to decide. *Id.* at 1089–90.

█ The majority in *Peavler* created a distinction between warning signs and stop and yield signs. However, we see no basis for such a distinction. Our opinion in *Tell City* was based upon the statutory scheme set forth in IND.CODE 9-4, the Uniform Act Regulating Traffic on Highways. The act governs the placement of warning signs in Indiana, and requires the Indiana State Highway Commission to adopt a manual, specifying a uniform system for traffic control devices, which must be adhered to by all governmental agencies responsible for signing and marking streets and highways within the state. IND.CODE 9-4-1-30; IND.CODE 9-4-2-1. Both the act and the manual clearly make the decision to erect traffic signs, including warning signs, discretionary. Under the act, a traffic control device is defined as "all signs, markings or devices ... placed or erected by authority of a public body or official having jurisdiction for the purpose of regulating, *warning*, and guiding traffic." (Emphasis added.) IND.CODE 9-4-1-19. The authority to erect a traffic control device can be exercised by the public body or the commissioners only by ordinance after traffic studies and surveys have been conducted. The manual lists a number of "typical locations and conditions which may be considered for the use of warning signs." *Manual* at 2C-1. The manual states that " 'may' is meant to be a permissive and not a mandatory condition. No specific requirements are intended in the design or use of the device." *Manual* at 1A-5. In *Tell City* we held that because the grant of power to the local legislature is preceded by the word "may" the exercise thereof was discretionary. The decision to erect any type of traffic control device, including warning signs, upon a public highway must be exercised by ordinance by the local legislative body. Any action or non-action in that regard is legislative and therefore discretionary. We see no distinction between the failure to erect a stop sign, the subject of the dispute in *Tell City*, and the failure to erect warning signs.

This conclusion is consistent with our holding in *Board of Comm'rs of County of Steuben v. Hout* (1986), Ind.App., 497 N.E.2d 597. In *Hout*, the plaintiff who was injured when his automobile collided into a metal guardrail at a "T" intersection over the crest of a hill, alleged that the board negligently failed to place a warning sign before the approach to the intersection. The *Hout* court rejected the distinction between warning signs and stop or yield signs adopted by the majority in *Peavler*, and reversed the denial of the board's motion for summary judgment, holding that decisions regarding the use of warning signs was a discretionary act for which the board was immune from liability under the Tort Claims Act. Judge Staton, writing for the majority, stated:

> We cannot agree with the holding in *Peavler* that the installation of warning signs at dangerous locations may be a ministerial act. To recognize such an exception, and particularly to make dangerousness a jury question, is to allow the sort of second guessing by lay juries that the First District rejected in *Tell City* with regard to stop and yield signs. 489 N.E.2d at 964.

> We see no distinction in the Act or the Manual between stop and yield signs and warning signs. The passages quoted above indicate the legislature's intent to give individual highway authorities discretion in the use of warning signs, just as in the use of other signs. The Manual lists a number of "typical locations and conditions which *may* be considered for the use of warning signs." Manual, at 2C-1. (Emphasis added). As the Manual states " 'MAY' is meant to be a permissive and not a mandatory condition. No specific requirements are intended in the design or use of the device." Manual, at 1A-5 (quoted in *Tell City*, 489 N.E.2d at 961).

497 N.E.2d at 601. The failure to erect warning signs at or near the juncture of Chestnut Street and the parking lot exit is a discretionary act for which the City is immune from liability as a matter of law.

Doyle also claims that the trial court erred in granting the City's motion for summary judgment because the placement of curb markings to prohibit parking only within an area eight to ten feet in length immediately beyond the parking lot exit violated a ministerial duty created by the manual to install markings a minimum of 20 feet long at that location. As discussed above, in *Tell City* this court determined that the decision of a governmental entity whether to erect a certain traffic control device at a particular location is a discretionary as well as a regulatory act for which it is immune from liability under the Tort Claims Act. IND.CODE 9-4-1-28(a)(1) grants local authorities the power, with respect to streets and highways under their jurisdiction and within the reasonable exercise of the police power, to regulate the standing or parking of vehicles. Adherence to official traffic control devices is mandated by statute. IND.CODE 9-4-1-33. IND.CODE 9-4-1-114 lists several instances where parking is prohibited, and a person who violates this section commits a Class C infraction. IND.CODE 9-4-1-127.1(b). As in *Tell City*, the City's decision to place curb markings at the location in question was a discretionary act for which the City is immunized from liability under IND.CODE 34-4-16.5-3(6). There is no distinction between stop signs and curb markings. Both regulate traffic; both are penal in nature if violated.

However, in *Harvey v. Board of Comm'rs of Wabash County* (1981), Ind.App., 416 N.E.2d 1296, we held that once the decision is made to erect a traffic control device, adherence to the manual's physical specifications regarding the device is a ministerial rather than a discretionary duty. Therefore, once the determination to install a device is made, the governmental entity is bound to the manual's uniform requirements as to size, color, shape, and height. As in *Harvey* we are dealing with an assertion that the physical aspects of the curb markings did not meet the manual's specifications.

The record indicates that there was no factual dispute with regard to the physi-

cal characteristics of the curb markings or the location where they were installed. Chestnut was 33 feet wide and there were no crosswalks, fire hydrants, or other traffic control devices at the juncture of the parking lot exit and Chestnut Street. Yellow curb markings prohibiting parking were painted on the curb eight to ten feet in length immediately north of the exit. Generally, whether the physical aspects of a particular control device are in compliance with the manual is a question of fact for the jury to determine. However, Doyle claims that under the circumstances the manual creates a ministerial duty to install curb markings a minimum of 20 feet long beyond the parking lot exit. Whether the manual requires this is a question of law properly before us.

Doyle relies upon Figure 3–16 in the manual to support his argument that the curb markings must be a minimum of 20 feet long. Figure 3–16 contains three illustrations each depicting intersecting roadways containing crosswalks and bordered by sidewalks. The figure illustrates parking space configurations and no-parking zones. The first and third illustrations depict 20–foot minimum no-parking zones upon approaches to intersections with crosswalks. The second illustration depicts a 30–foot minimum no-parking zone upon an approach to a traffic signal. Doyle maintains that the first and third illustrations mandate that the curb markings at the parking lot exit should have extended a minimum of 20 feet. We disagree.

Figure 3–16 corresponds to Section 3B–18 in the manual entitled Curb Markings for Parking Restrictions. The figure depicts no parking zones as described above, but is primarily illustrative of various parking space limit configurations within parking zones. Each illustration depicts the desirable length and width of parking stalls within a parking zone. With regard to the physical aspects of the curb markings, the manual only states that "[t]he curb marking is normally a solid yellow color, covering the face and top of the curb." *Manual* at 3B–34. Nothing in that section makes reference to any minimum length specifications for a no-parking zone. As discussed

above, any reference to length requirements for a no-parking zone is a small notation placed within the illustrations in Figure 3–16. Furthermore, the figure illustrates *typical* parking-space configurations. It can hardly be said that the manual mandates that curb markings shall extend a minimum of 20 feet.

Assuming arguendo that the manual mandates 20–foot minimum yellow curb markings, the manual does not mandate that such a requirement shall be observed at locations similar to the juncture of Chestnut Street and the parking lot exit. The manual states that "[c]urb markings may be used to show where parking is prohibited at all times. They should not be used except on curbs along which parking is legally prohibited at all times." *Manual* at 3B–34. The manual also lists several instances where all parking is prohibited for a minimum distance. This section makes reference and corresponds to the permanent parking prohibitions set forth in IND.CODE 9–4–1–114. The manual and the IND.CODE establish only two instances wherein parking is prohibited for a minimum of 20 feet. In pertinent part, IND. CODE 9–4–1–114 states:

> Stopping, standing or parking; prohibited areas
>
> (a) No person shall stop, stand, or park a vehicle, except when necessary to avoid conflict with other traffic or to avoid conflict with law or the directions of a police officer or traffic control device in any of the following places:
>
> . . . .
>
> 6. Within twenty (20) feet of a crosswalk at an intersection;
>
> . . . .
>
> 10. Within twenty (20) feet of the driveway entrance to any fire station and on the side of a street opposite the entrance to any fire station within seventy-five (75) feet of said entrance (when properly sign-posted).

Figure 3–16 is illustrative of the permanent parking prohibitions set forth above. The first and third illustrations indicating 20–foot minimum no-parking zones are re-

flective of IND.CODE 9-4-1-114(a)(6). That section prohibits parking within 20 feet of a crosswalk at an *intersection.* The minimum curb marking requirement is limited to intersections containing crosswalks. Absent either, the minimum curb marking requirement is inapplicable. There is no factual dispute regarding the physical characteristics of the juncture of the parking lot exit and Chestnut Street. However, whether this juncture constitutes an intersection is a question of law.

An intersection is defined by IND.CODE 9-4-1-15 in pertinent part as:

(a) The area embraced within the prolongation or connection of the lateral curb lines, or if none, then the lateral boundary lines of the roadways of two (2) highways which join one another at, or approximately at, right angles, or the area within which vehicles traveling upon different highways joining at any other angle may come in conflict.

In order for an intersection to exist the "roadways" of two "highways" must join at some point. IND.CODE 9-4-1-14 defines a highway as:

(a) The entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel;

and a roadway as:

(c) That portion of a highway improved, designed, or ordinarily used for vehicular travel.

The parking lot in question was not open to the public. It is undisputed that the parking lot was owned and operated by Vincennes University, and parking stickers were required for students to use it. It is also patrolled and parking violations enforced by University employed police cadets. Furthermore, this court has held that a parking lot does not qualify as a highway under the statutory definition of the term contained in IND.CODE 9-4-1-14. *City of Evansville v. Walker* (1974), 162 Ind.App. 121, 318 N.E.2d 388. Accordingly, as a matter of law, the juncture of Chestnut Street and the parking lot is not an intersection.

The manual does not create a ministerial duty to install 20-foot minimum curb markings. To the extent such a duty can be so construed, the manual mandates the duty only with respect to intersections containing crosswalks. As discussed above, the area in dispute did not constitute an intersection. The manual, therefore, does not mandate a ministerial duty to place curb markings of any particular length at the juncture of Chestnut and the exit. The yellow eight-foot curb markings were in compliance with the manual's physical specifications for the device. The trial court did not err in granting the City's motion for summary judgment.

Accordingly, for the above reasons, the judgment is affirmed.

Judgment affirmed.

ROBERTSON and STATON, JJ., concur.