**Bradley CASH, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 67A01–9111–CR–331.

Court of Appeals of Indiana,
First District.

June 18, 1992.

William Bracken, Greencastle, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

ROBERTSON, Judge.

Bradley Cash appeals his conviction of possession of marijuana, a class A misdemeanor. Cash argues that the trial court erroneously denied his motion to suppress and overruled his objection to the introduction of evidence obtained from a search of his person incident to a stop for a traffic violation. Cash contends the seizure was merely a pretext to look for other evidence of criminal wrongdoing and violated the Fourth and Fourteenth Amendments of the United States Constitution. We agree with Cash that the officer who stopped Cash's vehicle did not have an objectively reasonable suspicion, based upon specific and articulable facts, that Cash had committed a traffic violation. Accordingly, and because the evidence acquired during the search was critical to the State's proof of posses-

sion of marijuana, we reverse Cash's conviction.

The record reflects that Indiana State Police Trooper Fajt stopped Cash on the afternoon of December 24, 1990 because Cash's license plate "did not look secure." Fajt testified that he was driving south on U.S. 231 when Cash who was traveling in a northerly direction passed him. Fajt looked in his rearview mirror as Cash's vehicle passed and observed that Cash's license plate was off-center. After Fajt turned around and began following Cash's vehicle, he noticed that the plate was fastened by a single bolt and "did not look secure." He then proceeded to stop the vehicle.

When asked specifically, at the hearing on Cash's motion to suppress and subsequently at trial, what about the plate was not secure, Trooper Fajt repeatedly stated that the plate did not look secure because it had only one bolt through it. The officer expounded:

> The way the license plate was supposed to be secured to the bumper, it has at least two holes in the top of the ... and the plate was supposed to be centered with the gasoline tank itself covering it up. The plate, however, was fastened to the bumper with only a single bolt. The bolt passed through the top right corner of the license plate and that was attached to the left top hole of the bumper and there would be another hole over here where the plate should have been centered.

(R. 295). Cash's license plate "did not flop while [Fajt] was following him" and was in a horizontal position, though off-center. It was not affixed to a specially-made license plate bracket but directly to the vehicle's bumper. Trooper Fajt had never before stopped a vehicle because the license plate had been secured by a single bolt though he had issued citations because license plates had not been securely fastened.

Cash exited his vehicle immediately upon stopping; and, as he encountered Trooper Fajt, the trooper smelled burnt marijuana about Cash's person. Trooper Fajt did not check to see whether Cash's license plate was in fact fastened securely to the bumper of Cash's vehicle but directed Cash to sit with him in the front seat of his commission where he proceeded to write Cash a warning ticket for the license plate. While in close proximity to Cash, Trooper Fajt again smelled marijuana, and questioned Cash whether he had been smoking the substance. After Cash left the trooper's commission, the trooper searched Cash and found on his person, in one of the pockets of his coveralls, the green substance which the State introduced in support of its possession charge.[1]

> Under the fourth amendment, a police officer who lacks probable cause but whose observations lead him reasonably to suspect that a particular person is committing a crime may detain that person briefly in order to investigate the circumstances that provoke suspicion. *U.S. v. Brignoni–Ponce* (1975), 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607. *Accord, Poling v. State* (1987), Ind., 515 N.E.2d 1074. Although stopping a car and detaining its occupant constitutes a seizure within the meaning of the fourth amendment, the governmental interest in investigating an officer's reasonable suspicion, based on specific and articulable facts, may outweigh the fourth amendment interest of the occupant in remaining secure from the intrusion. *U.S. v. Hensley* (1985), 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604.

*State v. Pease* (1988), Ind.App., 531 N.E.2d 1207, 1210.

▬▬ It is the requirement of reasonable suspicion which strikes the balance between the government's legitimate interest in traffic safety and an individual's reasonable expectation of privacy. Reasonable suspicion entails some minimum level of objective evidentiary justification. *Delaware v. Prouse* (1979), 440 U.S. 648, 655, 99 S.Ct. 1391, 1397, 59 L.Ed.2d 660. Due

---

1. Inasmuch as we have determined that the trooper's stop of Cash was constitutionally improper, and the stop itself is the sole basis stated by Cash for reversal, we will not address the constitutionality of the search of Cash's person incident to the stop.

weight must be given, not to the officer's inchoate and unparticularized suspicion or "hunch" but to the specific reasonable inferences which the officer is entitled to draw from the facts in light of his experience. *Terry v. Ohio* (1968), 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889. A court sitting to determine the existence of reasonable suspicion must require the agent to articulate the factors leading to that conclusion. *U.S. v. Sokolow* (1989), 490 U.S. 1, 10, 109 S.Ct. 1581, 1587, 104 L.Ed.2d 1.

■ The factors cited by Trooper Fajt as a basis for his suspicion that Cash had committed a traffic violation were his observations that Cash's license plate was not centered and that the plate was held in place by a single bolt. Indiana Code 9–1–4–7 (amended 1977) set the standard which governed law enforcement discretion concerning the attachment of license plates at the time of the stop. It provided, in relevant part:

> (b) Every registration plate shall at all times be securely fastened, in a horizontal position, ... so as to prevent the plate from swinging, ... in a place and position to be clearly visible ... The view of such plate shall not be obstructed nor obscured ...[2]

This pronouncement of state law does not require that a license plate be centered, secured with more than one bolt or hung on a bracket; what it requires is that, however fastened, it be done so securely *to prevent the plate from swinging* and that it be fastened in a horizontal position. The officer testified that he did not see the plate "flop" while he was following the vehicle; neither does the officer make any claim that the plate was in the prohibited "swinging" condition. To the contrary, the evidence established that, consistent with statute, the plate was being held in a horizontal position and was clearly visible.

Thus, the aim of the statute, to assure that the information contained on all registration plates be readily discernible, had been satisfied by Cash's use of a single bolt. Cash was not in violation of state law and there is no objective evidence, apart from Trooper Fajt's subjective assessment that the plate did not look secure, that Cash was at risk of violating the law. Trooper Fajt's interpretation of the law's requirements, that the plate be mounted on a bracket, affixed with at least two bolts, and centered, is not in accord with either the legislature's intent in enacting the provision or its explicit requirements. Trooper Fajt has imposed subjective conditions plainly beyond the scope of the regulation, criteria which a reasonable citizen cannot be expected to anticipate when he sets out to conform his conduct with the attachment law. As the United States Supreme Court observed in *Delaware v. Prouse,* to insist neither upon an appropriate factual basis for suspicion directed at a particular automobile nor upon some other substantial and objective standard or rule to govern the exercise of discretion would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches. 440 U.S. at 662, 99 S.Ct. at 1400. This kind of standardless and unconstrained discretion is the evil the Court has discerned when it has insisted that the discretion of the officer in the field be circumscribed, at least to some extent. *Id.*

The State cites *Moyer v. State* (1978), 177 Ind.App. 461, 379 N.E.2d 1036 in support of its assertion that the stop met the *Terry* standard, but that case is readily distinguishable because the stop there was based upon the additional circumstances that the rear window was obstructed, limiting vision into or out of the car, and the car decreased its speed as the officers in the police vehicle tried to view the car's occupants.

We observe in closing, in response to comments made at trial, that simple good faith on the part of the arresting officer is not enough. If it were, "the protections of the Fourth Amendment would evaporate."

---

**2.** Section (c) authorizes the commissioner of motor vehicles to make rules and regulations "to enforce the proper mounting and securing" of plates on the vehicle. To the best of our knowledge, the commissioner has not utilized this authority.

*Terry,* 392 U.S. at 21–22, 88 S.Ct. at 1879–1880.

The law enforcement officer who stopped Cash did not have probable cause or a reasonable suspicion that a criminal offense had been or was being committed in his presence. The stop of Cash was therefore constitutionally impermissible and the evidence obtained as a consequence of that stop should have been suppressed. Cash's conviction, based upon the erroneous admission of this evidence, must be reversed.

Judgment reversed.

BAKER and SHIELDS, JJ. concur.