STATE of Indiana, Appellant–Plaintiff,

v.

Gary M. GEIS, Appellee–Defendant.

No. 18A02–0208–CR–673.

Court of Appeals of Indiana.

Dec. 18, 2002.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

John Quirk, Muncie, IN, Attorney for Appellee.

**OPINION**

ROBB, Judge.

In November 2001, an Indiana State Trooper made a traffic stop of Gary Geis after Geis changed lanes without signaling. Geis was charged with Operating a Vehicle After a Lifetime Suspension, a Class C felony; Operating a Vehicle While Intoxicated Endangering a Person, a Class A misdemeanor; Operating a Vehicle with a Blood Alcohol Content of .08 or More, a Class C misdemeanor; and Operating a Vehicle While Intoxicated Endangering a Person, a Class D felony. Additionally, the State filed Notice of Intent to Seek Habitual Substance Offender Status. Prior to trial, Geis filed a Motion to Suppress evidence obtained during the stop, arguing that the stop was not authorized by statute. The Motion to Suppress was granted and the State now brings this appeal. We reverse and remand.

*Issue*

The State raises two issues for our review, which we consolidate and restate as whether the trial court properly granted Geis's Motion to Suppress.

*Facts and Procedural History*

On November 3, 2001, an Indiana State Trooper made a traffic stop of Geis after

observing Geis change lanes without signaling. As he approached Geis's motorcycle, he detected the odor of alcohol and he observed Geis's bloodshot eyes. The trooper read Geis the Implied Consent Law and Geis submitted to a certified chemical test that revealed his blood alcohol content to be .11 percent. The trooper also determined that Geis's driver's license had been suspended for life due to his status as an Habitual Traffic Offender.

The State filed several charges against Geis relating to the stop. In April 2002, Geis filed a Motion to Suppress, arguing that the trooper did not have the authority to stop Geis for merely changing lanes without signaling. The trial court conducted an evidentiary hearing and granted the motion. The State filed a Motion to Reconsider which the trial court denied. Citing the court's ruling that precluded further prosecution, the State filed a Motion to Dismiss, which was granted on May 6, 2002. This appeal ensued.

### Discussion and Decision

### I. Standard of Review

■ In reviewing a motion to suppress, we do not reweigh the evidence, but determine if there is substantial evidence of probative value to support the trial court's ruling. *State v. Straub,* 749 N.E.2d 593, 597 (Ind.Ct.App.2001) (citing *Carter v. State,* 686 N.E.2d 1254, 1258 (Ind.1997)). We look to the totality of the circumstances and consider all uncontroverted evidence together with conflicting evidence that supports the trial court's decision. *Id.* (citing *Haviland v. State,* 677 N.E.2d 509, 513 (Ind.1997)).

### II. Geis's Motion to Suppress

The State contends that the trial court erred in granting Geis's Motion to Suppress. The State argues that Geis violated Ind.Code section 9–21–8–25, which provides:

A signal of intention to turn right or left shall be given continuously during not less than the last two hundred (200) feet traveled by a vehicle before turning or changing lanes. A vehicle traveling in a speed zone of at least fifty (50) miles per hour shall give a signal continuously for not less than the last three hundred (300) feet traveled by the vehicle before turning or changing lanes.

The State contends that this section requires all motorists to use their turn signals during not less than the last two hundred (200) feet traveled before changing lanes. Therefore, the state contends that Geis violated Indiana Code section 9–21–8–25 and the trooper was authorized to conduct a traffic stop for that violation.

Geis argues, however, that the trial court properly granted his Motion to Suppress. He states that the trooper did not have the authority to stop him because he did not violate any statute in changing lanes without using a turn signal. Geis relies on Indiana Code section 9–21–8–24 which provides:

A person may not:

(1) slow down or stop a vehicle;

(2) turn a vehicle from a direct course upon a highway; or

(3) change from one (1) traffic lane to another;

unless the movement can be made with reasonable safety. Before making a movement described in this section, a person shall give a clearly audible signal by sounding the horn if any pedestrian may be affected by the movement and give an appropriate stop or turn signal in the manner provided in sections 27 through 28 of this chapter if any other vehicle may be affected by the movement.

Because he contends that his lane change did not affect any other vehicle, Geis argues that he was not required by statute to use his turn signal.

A different panel of this court recently analyzed these statutes in *Peck v. State,* 705 N.E.2d 188 (Ind.Ct.App.1998), *vacated by* 712 N.E.2d 951 (Ind.1999). In *Peck,* a police officer made a traffic stop of a motorist after the motorist made a turn without signaling. The motorist filed a Motion to Suppress the evidence acquired during the traffic stop. This court held that the motorist's failure to signal did not violate Indiana Code section 9–21–8–24 because the motorist's turn did not affect another vehicle and therefore, reversed the trial court's denial of the Motion to Suppress. *Id.* at 188–89. Judge Staton penned a dissent stating his belief that the motorist violated Indiana Code section 9–21–8–25 and that therefore, the Motion to Suppress was properly denied by the trial court. *Id.* at 189–90 (Staton, J., dissenting).

Our supreme court agreed with Judge Staton's dissent and held that the motorist's failure to signal while making a turn violated Indiana Code section 9–21–8–25 which states that a motorist shall signal before making a turn or changing from one lane of traffic to another. *Peck v. State,* 712 N.E.2d 951, 951 (Ind.1999). Therefore, the supreme court held that the traffic stop was justified and affirmed the trial court's denial of the Motion to Suppress. *Id.*

■ Geis makes two arguments to us as to why we should not follow our supreme court's ruling in *Peck* and hold that his Motion to Suppress was improperly granted. First, he argues that the trooper had no authority to stop him because no evidence was produced at the hearing to show that the lane change was not made safely or that it affected any other driver. However, this argument relies on this court interpreting only section 9–21–8–24. Section 9–21–8–25 does not state that the signal need only be used when the turn or lane change will affect another vehicle—it states that a signal *"shall* be given continuously during not less than the last two hundred (200) feet traveled by a vehicle before turning or changing lanes." (Emphasis added.) By reading both sections, we see that the signal is required at all times, not only when another vehicle will be affected. Therefore, this argument is unpersuasive.

Second, Geis argues that the *Peck* court relied on information that the police officer's vehicle in that case was so close to the motorist's vehicle that the motorist could not argue that his turn did not affect the police officer's vehicle. However, this argument is also unconvincing. In his dissent from this court's majority opinion, Judge Staton wrote:

The majority erroneously concludes that Officer Szweda's stop of Peck was unjustified. First, Ind.Code § 9–21–8–25 (1993) provides, in part: "A signal of intention to turn right or left shall be given continuously during not less than the last two hundred (200) feet traveled by a vehicle before turning or changing lanes." Peck failed to signal before turning right. Thus, Peck violated IC 9–21–8–25, thereby committing a Class C infraction, and Officer Szweda was justified in stopping his vehicle.

Second, contrary to the majority's holding, the record supports the conclusion that Peck violated Ind.Code § 9–21–8–24 (1993). IC 9–21–8–24 requires a motorist to give a turn signal when any other vehicle may be affected by the turn. The record establishes that Officer Szweda was driving a half-block behind Peck when Peck turned without signaling. Given the proximity of Officer Szweda's vehicle to Peck's vehicle,

the trial court could have concluded that Officer Szweda's vehicle "may" have been "affected" by Peck's turn.

*Peck,* 705 N.E.2d at 190 (Staton, J., dissenting) (footnote omitted). For his argument, Geis relies on a statement made by the Supreme Court in their analysis of *Peck:*

> Judge Staton in dissent calls our attention to another statute governing vehicle operation, Ind.Code § 9–21–8–25 (1993), which provides in relevant part: "A signal of intention to turn right or left shall be given continuously during not less than the last two hundred (200) feet traveled by a vehicle before turning or changing lanes."
>
> Judge Staton's point is well taken....

*Peck,* 712 N.E.2d at 951.

We do not find that the above-quoted remarks refer to the second point made by Judge Staton in his dissent regarding section 9–21–8–24. Rather, the opinion shows the supreme court's agreement with Judge Staton's first point and they are silent on the second point. The opinion does not include any discussion of the proximity of the two vehicles—rather, the opinion analyzed the text of section 9–21–8–25 and found that the motorist had failed to signal when he was required to do so by statute.

■ Geis failed to signal when changing lanes and so violated Indiana Code section 9–21–8–25. The stop was therefore justified and the trial court erred in granting Geis's Motion to Suppress the evidence obtained in the stop.

### Conclusion

Geis failed to signal when changing lanes, violating Indiana Code section 9–21–8–25. Therefore, the traffic stop made by the trooper was justified and the trial court erred in granting Geis's Motion to Suppress the evidence obtained in the stop.

Reversed and remanded for further proceedings consistent with this opinion.

RILEY and MATTINGLY–MAY, JJ., concur.