Gregory E. STATEN,
Appellant/Defendant,

v.

STATE of Indiana, Appellee/Plaintiff.

No. 87A04–1005–CR–393.

Court of Appeals of Indiana.

April 18, 2011.

Rehearing Denied July 12, 2011.

Dawnya G. Taylor, Law Offices of Mark K. Phillips, P.C., Boonville, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Gary R. Rom, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BRADFORD, Judge.

Appellant/Defendant Gregory Staten appeals following his conviction for Class A misdemeanor Operating a Vehicle While Intoxicated Endangering a Person.[1] We affirm in part and reverse in part.

## FACTS AND PROCEDURAL HISTORY

Sometime after midnight on August 25, 2008, Indiana State Trooper Joshua Greer observed a vehicle, which he later determined was being driven by Staten, driving on the Boonville Junior High School access road between State Road 61 and Yankeetown Road. While driving approximately 100 yards behind Staten, Trooper Greer saw Staten drive left of center and drive through a 3–way stop sign without stopping or slowing down. After seeing Staten commit these potential traffic violations, Trooper Greer initiated a traffic stop.

Upon approaching Staten's vehicle, Trooper Greer could smell a strong odor of alcoholic beverage through Staten's open driver's side window. Trooper Greer identified himself as an Indiana State Trooper and asked for Staten's driver's license and vehicle registration. Staten retrieved his wallet. While going through his wallet, Staten passed his driver's license several times before handing Trooper Greer his bank debit card. Trooper Greer gave Staten back his debit card, told Staten he needed Staten's driver's license, and pointed to Staten's driver's license which he saw in Staten's wallet. Eventually, Staten gave Trooper Greer his driver's license and told Trooper Greer that he had been drinking at the Duck Inn.

Trooper Greer asked Staten if he was willing to perform field sobriety tests, and Staten agreed. Staten attempted to perform the horizontal gaze nystagmus test and the one-leg-stand test. Staten failed

1. Ind.Code § 9–30–5–2(b) (2008).

both tests. After administering a portable breath test, Trooper Greer read Staten the Indiana Implied Consent. Staten agreed to take the chemical test, and Trooper Greer transported Staten to the Chandler Police Department where the test was subsequently administered by Chandler Police Officer Eric Morris. The results of the chemical test indicated that Staten registered a blood alcohol content ("BAC") of 0.15 percent.

On August 25, 2008, the State charged Staten with Class A misdemeanor operating a vehicle while intoxicated endangering a person, Class A misdemeanor operating a vehicle with a BAC of 0.15 or more, Class C misdemeanor operating a vehicle while intoxicated, Class C infraction failing to obey a stop sign, and Class C infraction driving on the wrong side of the road. Following a bench trial, the trial court found Staten guilty of the three operating while intoxicated charges and the failing to obey stop sign infraction. On May 28, 2010, the trial court sentenced Staten to concurrent terms of one year for the Class A misdemeanor operating while intoxicated convictions and a concurrent term of thirty-days for the Class C misdemeanor operating while intoxicated, all of which was suspended to probation. The trial court also imposed a $5 fine for the Class C traffic infraction. On June 15, 2010, the trial court, on its own motion, issued a corrected judgment and sentencing order that vacated the convictions of and sentences for Class A misdemeanor operating a vehicle with a BAC of .15 or more and Class C misdemeanor operating a vehicle while intoxicated. The trial court ordered that the conviction and one-year suspended sentence for Class A misdemeanor operating a vehicle while intoxicated endangering a person and that the $5 fine for the Class C traffic infraction remain. This appeal follows.

## DISCUSSION AND DECISION

Initially, we note that to the extent that Staten challenges the sufficiency of the evidence to supporting the trial court's determination that he committed a Class C traffic infraction by failing to obey a stop sign, the State concedes that, as charged, the evidence at trial was insufficient to prove that Staten committed the Class C infraction. Therefore, we vacate the trial court's finding that Staten committed the Class C traffic infraction as well as the related $5 fine.

### I. Admission of Evidence

[1] Staten contends that the trial court abused its discretion by admitting his blood alcohol test results obtained from the chemical blood test following the traffic stop. Specifically, Staten argues that, despite his consent to submit to a chemical test, the blood alcohol test results obtained from the chemical blood test were inadmissible because the traffic stop was illegal. The admission and exclusion of evidence falls within the sound discretion of the trial court and, on appeal, we review the admission of evidence only for an abuse of discretion. *Datzek v. State*, 838 N.E.2d 1149, 1154 (Ind.Ct.App.2005), *trans. denied.* An abuse of discretion occurs " 'where the decision is clearly against the logic and effect of the facts and circumstances.' " *Id.* (quoting *Smith v. State*, 754 N.E.2d 502, 504 (Ind.2001)).

Staten argues that the traffic stop was illegal because Trooper Greer had a mistaken belief that he committed a traffic violation when he drove through the three-way stop sign without stopping or slowing down. Staten's argument regarding the legality of the traffic stop is based on Indiana Code section 9–21–8–32 (2008), which provides in relevant part that "[a] person who drives a vehicle shall stop at an intersection where a stop sign is erect-

ed at one (1) or more entrances to a through highway that are not part of the through highway and proceed cautiously, yielding to vehicles that are not required to stop." In making this claim, Staten argues that the stop was illegal because he did not drive through a stop sign that was at an entrance to a through highway.

The State concedes that Staten did not violate Indiana Code section 9–21–8–32, but argues that the traffic stop was legal because, pursuant to Indiana Code section 9–21–4–11 (2008), the Indiana Department of Transportation had designated the intersection in question as a "stop intersection" and had erected a 3–way stop sign at the intersection. The State further argues that since Staten failed to stop at the posted stop sign, Staten violated Indiana Code section 9–21–4–18 (2008), which provides that "[a] person who drives a vehicle must obey the markings or signs posted under this chapter." [2]

▇▇▇ It is well-established that police officers may stop a vehicle when they observe minor traffic violations. *State v. Quirk,* 842 N.E.2d 334, 340 (Ind.2006); *Jackson v. State,* 785 N.E.2d 615, 619 (Ind. Ct.App.2003), *trans. denied; Smith v. State,* 713 N.E.2d 338, 342 (Ind.Ct.App. 1999), *trans. denied.* A traffic violation, however minor, creates probable cause to stop the driver of the vehicle. *Quirk,* 842 N.E.2d at 340. A stop is lawful if there is

an objectively justifiable reason for it, and the stop may be justified on less than probable cause. *Jackson,* 785 N.E.2d at 619; *Smith,* 713 N.E.2d at 342. If there is an objectively justifiable reason for the stop, "then the stop is valid whether or not the police officer would have otherwise made the stop but for ulterior suspicions or motives." *Jackson,* 785 N.E.2d at 619; *Smith,* 713 N.E.2d at 342.

Here, the record clearly demonstrates that Staten disobeyed the posted stop sign. Trooper Greer testified that he initiated a traffic stop on the access road that connects State Road 61 to Yankeetown Road in Boonville after observing Staten drive his vehicle through the three-way stop sign without stopping or slowing down. In light of Trooper Greer's testimony, we conclude that the evidence was sufficient to determine that Staten committed a traffic violation by disobeying a posted three-way stop sign in violation of Indiana Code section 9–21–4–18,[3] thereby giving Trooper Greer the legal right to stop his vehicle. *See Quirk,* 842 N.E.2d at 340 (providing that police officers may stop a vehicle when they observe minor traffic violations). Accordingly, the trial court did not abuse its discretion in admitting the blood alcohol test results obtained from the chemical blood test following the traffic stop.

---

**2.** Indiana Code section 9–21–4–19 provides that "[a] person who violates section . . . 18 of this chapter commits a Class C infraction."

**3.** The fact that either the Trooper or the prosecutor charged Staten with disobeying a stop sign under Indiana Code section 9–21–8–32 is irrelevant and the traffic stop was valid because Staten's act of "disobeying" a posted stop sign is a traffic violation under Indiana Code section 9–21–4–18. *See Peck v. State,* 712 N.E.2d 951, 951 (Ind.1999) (holding that the traffic stop of the defendant was justified despite the fact that defendant did not violate

Indiana Code section 9–21–8–24 as charged by the State, but did violate Indiana Code section 9–21–8–25 by failing to use a turn signal when turning); *State v. Geis,* 779 N.E.2d 1194, 1197 (Ind.Ct.App.2002) (rejecting the defendant's argument that the traffic stop was unjustified under Indiana Code section 9–21–8–24 and holding that the traffic stop of the defendant was justified because the defendant violated Indiana Code section 9–21–8–25 by failing to use his turn signal), *trans. denied.*

## II. Sufficiency of the Evidence

■ Staten also challenges the sufficiency of the evidence to support his Class A misdemeanor operating a vehicle while intoxicated endangering another person conviction.

When reviewing the sufficiency of the evidence to support a conviction, "appellate courts must consider only the probative evidence and reasonable inferences *supporting* the verdict." *McHenry v. State,* 820 N.E.2d 124, 126 (Ind.2005) (emphasis added). It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. *Wright v. State,* 828 N.E.2d 904 (Ind.2005). To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it "most favorably to the trial court's ruling." *Id.* Appellate courts affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Jenkins v. State,* 726 N.E.2d 268, 270 (Ind.2000) (emphasis added). It is therefore not necessary that the evidence "overcome every reasonable hypothesis of innocence." *Moore v. State,* 652 N.E.2d 53, 55 (Ind. 1995). "[T]he evidence is sufficient if an inference may reasonably be drawn from it to support the verdict." *Pickens v. State,* 751 N.E.2d 331, 334 (Ind. Ct.App.2001).

*Drane v. State,* 867 N.E.2d 144, 146–47 (Ind.2007).

■ Staten does not dispute that he was intoxicated at the time of the traffic stop, but argues that the State did not prove the element of endangerment. To prove endangerment, the State must prove that the defendant was operating the vehicle in a condition or manner that *could* have endangered any person, including the public, the police, or the defendant. *Outlaw v. State,* 918 N.E.2d 379, 381 (Ind.Ct.App. 2009). However,

the endangerment clause does not require that the State prove a person other that the defendant was actually in the path of the defendant's vehicle or in the same area in order to obtain a conviction. [*State v.*] *Krohn,* 521 N.E.2d [374,] 377 [ (Ind.Ct.App.1988) ]. An officer does not have to wait until the defendant crosses the centerline and adds another victim to the statistics of those who have died in drunk driving accidents. *Id.* Thus, it is sufficient that the defendant's condition renders driving unsafe. *Id.*

*Staley v. State,* 895 N.E.2d 1245, 1251 (Ind.Ct.App.2008), *trans. denied.*

Here, Staten's intoxication clearly resulted in unsafe driving practices. Trooper Greer testified that while driving approximately 100 yards behind Staten, he saw Staten drive his vehicle left of center line and through a 3–way stop sign without stopping or slowing down. We conclude that Trooper Greer's testimony regarding Staten's unlawful and unsafe driving is sufficient to prove that he was operating a vehicle in a manner that could endanger the public, the police, or himself. *See id.* (providing that the evidence was sufficient to prove endangerment when officer testified that he observed the defendant driving unlawfully, *i.e.,* over the posted speed limit); *compare with Outlaw,* 918 N.E.2d at 382 (providing that the State failed to present sufficient evidence of endangerment when it failed to present any evidence of erratic or unlawful driving).

Based on the foregoing, we conclude that the trial court properly admitted Staten's blood alcohol test results and that the State presented sufficient evidence to support Staten's conviction beyond a reasonable doubt.

The judgment of the trial court is affirmed in part and reversed in part.

KIRSCH, J., concurs.

CRONE, J., concurs in part and dissents in part with opinion.

CRONE, Judge, concurring in part and dissenting in part.

The State concedes that it failed to prove that Staten committed the class C traffic infraction with which he was charged, and I concur in the majority's decision to vacate the trial court's finding on that count. I respectfully disagree, however, with the majority's conclusions that (1) the traffic stop was valid and (2) the State presented sufficient evidence to sustain Staten's conviction for class A misdemeanor operating while intoxicated ("OWI").

### 1. Validity of Traffic Stop

"The State has the burden of proving that the investigatory stop of an automobile was not violative of the constitutional protections against unreasonable search[es] and seizures." *State v. Smith*, 638 N.E.2d 1353, 1355 (Ind.Ct.App.1994). "A police officer may stop a vehicle when he observes a minor traffic violation. A stop is lawful if there is an objectively justifiable reason for it, and the stop may be justified on less than probable cause." *Ransom v. State*, 741 N.E.2d 419, 421 (Ind. Ct.App.2000) (citation omitted), *trans. denied.* "Although a law enforcement officer's good faith belief that a person has committed a violation will justify a traffic stop, an officer's mistaken belief about what constitutes a violation does not amount to good faith. Such discretion is not constitutionally permissible." *Id.* at 422 (citation omitted). *See also Cash v. State*, 593 N.E.2d 1267, 1269 (Ind.Ct.App. 1992) ("[S]imple good faith on the part of the arresting officer is not enough. If it

were, 'the protections of the Fourth Amendment would evaporate.'") (quoting *Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).

The State charged Staten with a class C infraction for violating Indiana Code Section 9–21–8–32, which says, "A person who drives a vehicle shall stop at an intersection where a stop sign is erected at one (1) or more entrances to a through highway that are not a part of the through highway and proceed cautiously, yielding to vehicles that are not required to stop." Indiana Code Section 9–13–2–178 defines "through highway" as "a highway or portion of a highway at the entrance to which vehicular traffic from intersecting highways is required by law to yield right-of-way to vehicles on the through highway in obedience to either a stop sign or a yield sign." As Staten points out, Trooper Greer admitted at trial "that the access road where Staten was stopped is not a through highway and the stop sign that Greer observed Staten disregard did not control traffic at a through highway." Appellant's Br. at 7–8. The State properly acknowledges its complete failure of proof as to the "through highway" element of the infraction, and thus the infraction must be vacated.

Nevertheless, the State argues that Staten's "actions did constitute a traffic infraction, therefore it does not matter for the validity of the traffic stop that [Trooper] Greer mistakenly charged [Staten] with the wrong infraction." Appellee's Br. at 4. (The State cites no authority that directly supports this "no-harm, no-foul" proposition.) The State first directs us to Indiana Code Section 9–21–4–11, which provides:

The Indiana department of transportation, with reference to state highways and highway routes through cities, and local authorities, with reference to other highways under their jurisdiction, may,

upon an engineering and traffic investigation, designate:

(1) through highways and erect stop or yield signs at specified entrances to the highways; or

(2) an intersection as a stop or yield intersection and erect stop or yield signs at one (1) or more entrances to the intersection.

A person who drives a vehicle must obey the signs posted under Indiana Code Chapter 9–21–4. Ind.Code § 9–21–4–18. A failure to do so constitutes a class C infraction. Ind.Code § 9–21–4–19.

Indiana Code Section 9–13–2–84(a) defines "intersection" as the area embraced within:

(1) the prolongation or connection of the lateral curb lines, or if none, then the lateral boundary lines of the roadways of two (2) highways that join at, or approximately at, right angles; or

(2) the area within which vehicles traveling upon different highways joining at any other angle may come in conflict.

And finally, Indiana Code Section 9–13–2–73 defines "highway" as "the entire width between the boundary lines of every publicly maintained way when any part of the way is open to the use of the public for purposes of vehicular travel. The term includes an alley in a city or town."

Based on a careful reading of the foregoing statutes, I believe that the State has failed to establish that Staten committed a traffic violation of any kind when he disregarded the stop sign on the access road. With respect to Indiana Code Section 9–21–4–11, the State ignores the fact that a stop sign erected pursuant to that statute must be erected by the Department of Transportation. The State presented no evidence in this regard at trial, and it is entirely possible that the school district erected the stop sign without any involvement by the DOT. As for whether the access road was a "highway" for purposes of Indiana Code Section 9–21–4–11, the State asserts that it was because it "was open to the public and was used for vehicular travel." Appellee's Br. at 5. Again, the State presented no specific evidence at trial on this point, although perhaps a reasonable inference to this effect could be drawn based on Staten's presence there. The State further asserts that "the intersection is a three-way stop, which indicates that one road intersects another." *Id.* The fatal flaw with this assertion is that an intersection must be a joining of two *highways* for purposes of Indiana Code Sections 9–21–4–11, and the State presented no evidence at trial that the roadway that joined the access road at the three-way stop was in fact a highway. So, even if one could infer from the evidence that the access road was a highway, there is no evidence that the roadway which led to the access road was a highway. *Cf. Dubois County Bank v. City of Vincennes*, 517 N.E.2d 805, 809 (Ind.Ct.App.1988) (concluding as a matter of law that juncture of street and parking lot was not an intersection because "a parking lot does not qualify as a highway under the statutory definition of the term"), *trans. denied.*

These multiple failures of proof are likely a result of the State charging Staten under Indiana Code Section 9–21–8–32, in that neither side had an opportunity to prove or disprove a violation of any other statute. In my view, the majority opinion glosses over the various statutory elements and definitions in an attempt to backfill for a defective prosecution. The fact remains that Trooper Greer mistakenly believed that Staten had violated Indiana Code Section 9–21–8–32, and the State has failed to establish that Staten committed any other traffic violation. Thus, the traffic stop was invalid. Conse-

quently, I would hold that the trial court should have excluded the evidence regarding Staten's intoxication that was obtained as a result of the invalid traffic stop and vacate his conviction for class A misdemeanor operating while intoxicated. *See Cash*, 593 N.E.2d at 1270 (holding that traffic stop based on officer's mistaken belief that defendant had committed a traffic violation was "constitutionally impermissible and the evidence obtained as a consequence of that stop should have been suppressed" and reversing defendant's conviction for marijuana possession).

## 2. Sufficiency of Evidence for Class A Misdemeanor OWI

I would hold that Staten's conviction for class A misdemeanor OWI should be vacated in any event because the State failed to prove beyond a reasonable doubt that he "operate[d] [his] vehicle [while intoxicated] in a manner that endanger[ed] a person" as required by Indiana Code Section 9–30–5–2(b). Staten does not dispute that he operated his vehicle while intoxicated, which is defined as being under the influence of alcohol "so that there is an impaired condition of thought and action and the loss of normal control of a person's faculties." Ind.Code § 9–13–2–86.[4] By definition, however, Indiana Code Section 9–30–5–2(b) "requires more than intoxication to prove endangerment." *Vanderlinden v. State*, 918 N.E.2d 642, 645 (Ind. Ct.App.2009), *trans. denied* (2010).

The majority cites *Outlaw v. State* for the proposition that "[t]o prove endangerment, the State must prove that the defendant was operating the vehicle in a condition or manner that *could* have endangered any person, including the public,

the police, or the defendant." Op. at 84 (citing *Outlaw*, 918 N.E.2d at 381). The majority further states that

> the endangerment clause does not require that the State prove a person other than the defendant was actually in the path of the defendant's vehicle or in the same area in order to obtain a conviction. [*State v.*] *Krohn*, 521 N.E.2d [374,] 377 [ (Ind.Ct.App.1988) ]. An officer does not have to wait until the defendant crosses the centerline and adds another victim to the statistics of those who have died in drunk driving accidents. *Id.* Thus, it is sufficient that the defendant's condition renders driving unsafe. *Id.*

*Id.* at 84 (quoting *Staley*, 895 N.E.2d at 1251).

With all due respect to my colleagues and the public policy concerns expressed in cases like *Outlaw*, *Krohn*, and *Staley*, I believe that the plain language of the statute requires the State to prove that a defendant operated his vehicle in a manner that *actually* endangered a person. "The primary rule in statutory construction is to ascertain and give effect to the intent of the legislature. The best evidence of legislative intent is the language of the statute, giving all words their plain and ordinary meaning unless otherwise indicated by statute." *Murray v. State*, 798 N.E.2d 895, 902 (Ind.Ct.App.2003) (citation omitted). "We must ... strictly construe penal statutes against the State to avoid enlarging them beyond the fair meaning of the language used." *Id.* In interpreting a statute, we must consider not only what the statute says, but also what it does not say. *State v. Prater*, 922 N.E.2d 746, 750 (Ind.Ct.App.2010), *trans. denied.*

---

4. Of course, the "fruit of the poisonous tree" doctrine would bar evidence regarding Staten's intoxication that was directly obtained during the invalid traffic stop as well as such

evidence that was derivatively gained as a result of information learned during that stop. *Taylor v. State*, 929 N.E.2d 912, 920 (Ind.Ct. App.2010), *trans. denied.*

Simply put, Indiana Code Section 9–30–5–2(b) does not say that a person commits class A misdemeanor OWI if he operates his vehicle in a manner that could *possibly* endanger a person. *See* Ind.Code § 9–30–5–2(b) (stating that operating a vehicle while intoxicated "is a Class A misdemeanor if the person operates a vehicle in a manner that endangers a person."). To obtain a conviction under this statute, I believe that the State must prove beyond a reasonable doubt that the defendant operated his vehicle in a manner that *actually* endangered himself or others. Proof of actual endangerment need not be proof of actual harm, but it must be something more than merely proof of operating a vehicle while intoxicated. To conclude otherwise would be to effectively obliterate the distinction between class C misdemeanor OWI (which requires only proof of intoxication) and class A misdemeanor OWI (which requires proof of both intoxication and endangerment). Moreover, I believe that proof of actual endangerment must consist of something more than prima facie evidence of unlawful driving. Otherwise, any intoxicated person who committed a traffic violation of any kind, no matter how minor, could be convicted of class A misdemeanor OWI, which strikes me as contrary to the intent of our legislature.

This is not to say that evidence regarding a person's intoxication or evidence that a person committed a traffic infraction would be irrelevant in proving endangerment, but only that the determination of endangerment should be fact-sensitive and dependent upon all the relevant circumstances of a particular case. Here, Staten, who was admittedly intoxicated, ran a stop sign on an apparently deserted access road in a small town in the middle of the night.[5] Although the manner in which Staten operated his vehicle could *possibly* have endangered himself or someone else, I believe that the State failed to prove beyond a reasonable doubt that he *actually* endangered himself or anyone else. Therefore, at a minimum, I would vacate his conviction for class A misdemeanor OWI due to insufficient evidence and remand with instructions to reinstate his conviction for class A misdemeanor operating a vehicle with a BAC of 0.15 or more. Because I believe that Staten's traffic stop was invalid, however, I would vacate his conviction for class A misdemeanor OWI and not remand for reinstatement of either of the remaining convictions.

---

5.   The majority states that Trooper Greer "saw Staten drive his vehicle left of center line and through a 3–way stop sign without stopping or slowing down." Op. at 84. It bears repeating that the State failed to prove that Staten committed the left-of-center infraction, which was subject to a less onerous preponderance-of-the-evidence standard. *See Rosenbaum v. State*, 930 N.E.2d 72, 74 (Ind.Ct.App.2010) ("[T]raffic infractions are civil, rather than criminal, in nature and the State must prove the commission of the infraction by only a preponderance of the evidence."), *trans. denied.*